W. J. Cole

*v.*

Mrs. C. A. Langford and H. E. Little, as Members of the Sumner County Election Commission.

427 S.W.2d 562.

(*Nashville,* December Term, 1967.)

Opinion filed April 15, 1968.

Fred A. Kelly, Gallatin, Harsh, Kelly & Harsh, Gallatin, of counsel, for complainant.

James M. Hunter, Gallatin, for defendants.

MR. CHIEF JUSTICE BURNETT delivered the opinion of the Court.

The parties will be referred to as they appeared in the trial court; that is, W. J. Cole, complainant, and Mrs. C. A. Langford and H. E. Little, as members of the Sumner County Election Commission, defendants.

The original bill was filed by the complainant in the Chancery Court of Sumner County on October 30, 1967, and alleged substantially the following facts: that a petition for an incorporation election for the City of Hendersonville, Tennessee, was filed on October 23, 1967, with the Sumner County Election Commission; that the petition alleges that the signatures attached thereto exceed twenty per cent of the voters of the described territory voting at the last general election and that the petition requests the election commission to hold an election on the question of whether the territory described in the petition shall be incorporated under the provisions of T.C.A. sec. 6-1801 et seq.; that the petition is signed by

thirty-nine persons who purportedly reside in the area described in the petition. The complainant alleges that he is a taxpayer and landowner in the territory sought to be incorporated and that he also owns land in the adjoining area.

The complainant then alleges that the territory or area described in the petition filed with the election commission comprises only a very small part of the territory which is known as Hendersonville, Tennessee, now unincorporated, the whole Hendersonville territory comprising approximately 40 square miles of developed and occupied land; that the area or territory in the petition which is proposed for incorporation comprises less than one square mile of land and that the territory known as Hendersonville, Tennessee, contains forty square miles of territory which is uninterrupted by any physical barriers; that two thousand three hundred and thirty-one residents of the territory of Hendersonville voted in the last general election and that over fourteen thousand people reside in Hendersonville; that these residents are generally of the same economic and social class; that the petition to the election commission shows that the people signing the petition all live on two streets with the exception of four people with the great majority all being residents of one single street in the Hendersonville territory; that the whole territory of Hendersonville is served by 100 miles of water lines and twenty miles of sewer lines and that the area described in the petition to the election commission has a very small portion of said utilities.

It is alleged that the incorporation of such a small portion of the Hendersonville territory would not be an expression of the people of the whole territory and is not

within the meaning, intent or authority of Chapter 18 of Tennessee Code Annotated; that such an election would be "unlawful, illegal and void and would cause irreparable harm and damage to the Hendersonville territory and to the rights of the people residing therein and that such election is not authorized under the statutes of Tennessee and would be in violation of the Constitution of Tennessee."

The complainant then prays that the rights of the parties be declared; that the election commission be temporarily enjoined from holding the election and that at the hearing the injunction be made permanent.

A temporary injunction was issued to which the defendants responded with a motion to dissolve. Such motion alleged that the original bill was devoid of equity and therefore the injunction should be dissolved. It was also alleged that the original bill was improperly filed since it should have been filed in the name of the State on relation of the Attorney General in the nature of a quo warranto proceeding.

The Chancellor refused to dissolve the injunction but did grant the defendants a discretionary appeal to this Court.

In argument before this Court much emphasis has been placed on the question of whether the holding of an election can or will be enjoined. However, it is felt by us that the more important question in the case at bar is whether the complainant has standing to bring, in his own name, an action contesting the legality of this petition. After much thought and research we have concluded that he does not.

The complainant alleges that he is a landowner and taxpayer in the area sought to be incorporated and also that he is a resident of and landowner in the territory of Hendersonville, Tennessee. However, the complainant does not allege any injury special to himself that will not also be suffered by the other residents and landowners similarly situated. Indeed the original bill shows on its face that the injuries that would be suffered if the election were held would be to the public generally and to the Hendersonville territory. The original bill states: "such an election would be unlawful, illegal and void and would cause irreparable harm and damage to the *Hendersonville territory* and *to the rights of the people residing therein* and that such election is not authorized under the statutes of Tennessee and would be in violation of the Constitution of Tennessee." [Emphasis added.]

In the case of *Schultz v. Lewallen,* 188 Tenn. 206, 217 S.W.2d 944 (1948), the original bill was filed by certain citizens and taxpayers of Anderson County, to enjoin the election commissioners and others from holding elections in certain districts of Anderson County. The complainants alleged that the State and Anderson County had lost political jurisdiction of the area because the United States had acquired the area in condemnation proceedings. A demurrer was filed to the bill one of the grounds being that suing merely as citizens and taxpayers, the complainants had shown no special injury or irreparable damage which would entitle them to the injunctive relief sought. The Chancellor sustained the demurrer and dismissed the bill.

In affirming the action of the Chancellor, this Court, in an opinion written by Mr. Justice Gailor, stated:

"We think the decree of the Chancellor was correct and should be affirmed. Suing merely as citizens and taxpayers of Anderson County, the Complainants show no right in themselves to the relief sought. By the bill they show no rights of theirs which are special to themselves and are invaded by the County situation described in the bill, nor do they show any irreparable damage to themselves. Such showing was essential to entitle them to the relief sought. *Patton v. City of Chattanooga,* 108 Tenn. 197, 65 S.W. 414; *Wright v. Nashville Gas & Heating Co.,* 183 Tenn. 594, 194 S.W. 2d 459; *State v. Staten,* 46 Tenn. 233."

In the case at bar the Chancellor stated in his memorandum opinion that he was considering the bill as and for a declaratory judgment and that therefore the complainant had a right to maintain the action. We do not feel, however, that this fact changes the basic principles of law just enumerated. In the case of *Jared v. Fitzgerald,* 183 Tenn. 682, 195 S.W.2d 1 (1945), there was a petition seeking to have the Davidson County Democratic Primary declared illegal and void. The bill was filed by certain residents of Davidson County as members of the Democratic Party and as citizens and taxpayers of said county. No candidate in said Primary joined in the petition. The petition alleged several grounds which would make the election void. In a concurring opinion written by Mr. Chief Justice Neil, affirming the Circuit Judge's action in sustaining a demurrer to the petition, it is stated:

"We are thus asked to entertain a suit for a declaratory judgment that is 'not directed to any one individual but to the system.' I know of no case, and certainly none has been cited by counsel, holding that

a citizen may file a bill for himself and on behalf of the general public for a declaratory judgment, its sole purpose being to vindicate the public's right to have the primary election laws 'properly enforced and administered.' It is not the duty of any judicial tribunal to entertain a suit of this kind for the purpose of merely denouncing the acts of county election officials as being contrary to law, and that such officials must hereafter know that the law and 'the Constitution of this land are still supreme and must be recognized.'

"I think the rule announced in *Patton v. City of Chattanooga,* 108 Tenn. 197, 65 S.W. 414, 421, to which there is no exception, determines the rights of petitioners in the instant case. It was there held that the injury complained of must be special and 'not merely an injury in common with the body of the citizens.' "

In *Wright v. Nashville Gas & Heating Co.,* 183 Tenn. 594, 194 S.W.2d 459 (1945), the original bill was filed in the Chancery Court of Davidson County, under the declaratory judgment act by the complainant as a taxpayer and property owner of Nashville, seeking to have the charter and franchise of the defendant, Nashville Gas & Heating Company, declared to be invalid and illegal insofar as these corporate documents were construed to empower the defendant to sell natural, as distinguished from manufactured, gas in the City of Nashville. The Court in effect held that where the alleged wrong was against a particular body as a whole, and that the complainant showed no special interest, the representative of the body wronged was the proper party to seek redress of the grievances.

In the case at bar it seems clear that the alleged wrong is a wrong against the public and against the State

of Tennessee. The State has given the authority for holding these incorporation elections under certain circumstances. Certain requirements must be met before the petitioners are entitled to have an election held. If these procedures are not complied with but an election is held anyway, then the State and the public generally have been wronged. The incorporation statutes were passed for the benefit of the public and not just for the benefit of any one citizen or taxpayer.

Of course the citizens, residents and taxpayers of the immediate area affected by the alleged illegal action would be most interested in seeing that such action is halted. However, the necessity for orderly procedure would dictate that they contact the person properly authorized to proceed for them, as members of the public. This is true whether the relief sought be in the nature of a quo warranto proceeding or otherwise.

To allow each individual taxpayer and landowner to bring an action to enjoin the election commission, or any other public body, from proceeding with their official duties would only result in confusion, and would cause these officials to spend most of their time in court defending their actions. Although in the instant case the complainant would appear to have a legitimate grievance if his allegations are borne out, we can readily foresee that in almost any action taken by public officials there are some who would contest the same to the point of bringing a lawsuit; and since temporary injunctions are granted mostly upon allegations, the officials might be constantly prevented from carrying out their duties, which result would certainly work to the detriment of the general public.

Mr. Justice Dyer, speaking for the Court in the case of *City of Fairview v. Spears,* 210 Tenn. 404, 359 S.W.2d 824. (1961), stated the rule in the following terms:

" 'Public wrongs or neglect or breach of public duty cannot be redressed at a suit in the name of an individual or individuals whose interest in the right asserted does not differ from that of the public generally, or who suffers injury in common with the public generally, even it seems, though his loss be greater in degree, unless such right of action is given by statute. * * *

" 'In cases of purely public concern and in actions for wrongs against the public, whether actually committed or only apprehended, the remedy, whether civil or criminal, is as general rule by a prosecution instituted by the state in its political character, or by some officer authorized by law to act in its behalf, or by some of those local agencies created by the state for the arrangement of such of the local affairs of the community as may be intrusted to them by law. * * *

" 'In the enforcement of matters of public interest it is generally recognized that the attorney general appearing as a public officer is a proper party to maintain litigation.'

"If, as alleged the charter of Fairview has in fact been obtained in an illegal manner it is a public wrong."

Since the question is not properly before us, we express no opinion as to whether the election commission could have been enjoined had the action been brought by a representative of the public interest. We only hold that

when the only injury complained of is against the public generally, then the representative of the public must seek the redress, whether the proper course of action be to seek an injunction, or institute a quo warranto action or otherwise.

We would point out that if it resulted that the election would not be enjoined, the community would not be without a remedy. In the *Fairview* case just discussed it was clearly pointed out that a quo warranto action would lie against a municipal corporation which has obtained its charter illegally. Again we point out that we are expressing no opinion on the question of injunction.

It is with regret that we reverse such a well reasoned opinion as the one given by Chancellor Leech in this case wherein he reasoned that the incorporation statutes did not intend such an incorporation as the one attempted here. However for the reasons expressed herein, we feel compelled to do so.

The decision is reversed and the case dismissed.