CORPORATION OF COLLIERVILLE,
Appellant,

v.

FAYETTE COUNTY ELECTION
COMMISSION et al., Appellees.

Supreme Court of Tennessee.

May 24, 1976.

R. Lee Winchester, Jr., James W. Pate, II, Memphis, for appellant.

Troy W. Tomlin, Somerville, for appellees.

## OPINION

HENRY, Justice.

This suit in chancery poses the perennial problem of standing to sue. It arises in the context of an effort by an existing municipality to nullify the corporate charter of a contiguous municipality incorporated under § 6–1801, et seq., T.C.A. the statutory scheme for the incorporation of municipalities under city manager-commission charters.

The Chancellor sustained a Motion to Dismiss, under Rule 12.02, Tenn.R.Civ.P., holding that the corporation of Collierville had no standing to sue, since this was a *quo warranto* proceeding pursuant to § 23–2801(3) T.C.A. and, as such, must be brought in the name of the District Attorney General of the Judicial Circuit (16th) of which Fayette County is a part.

We reverse.

### I.

Collierville is a municipal corporation located in Shelby County, Tennessee and, according to the latest census for distributing state-shared taxes, has a population of 5,152 persons.

Piperton is a community in Fayette County, Tennessee, located within two miles of Collierville and, at places, its boundary coincides with that of Collierville. The area embraced within the proposed municipality of Piperton has a population of 389 persons according to the results of a special census certified on June 28, 1974.

On 3 March 1974, certain residents of Piperton, acting pursuant to § 6–1801, et seq., T.C.A., filed their petition with the Fayette County Election Commission requesting that an election be conducted in the proposed area. On 2 May 1974, the election was conducted and the next day the Commission certified that the proposal to incorporate had been adopted by a vote of fifty-four to thirty-seven.

Collierville filed its complaint on 30 July 1974, challenging the legality of Piperton's charter on various grounds, including a charge that:

> The boundaries of the proposed City of Piperton . . . are within two (2) miles of the boundaries of the incorporated Corporation of Collierville, being at times contiguous with the boundaries of said Corporation of Collierville.[1]

### II.

The statutory scheme is clear. Section 6–1803 provides in pertinent part:

> [T]hat if any part of unincorporated territory proposed for incorporation is within . . . two (2) miles of an existing city of five thousand (5,000) and less than one hundred thousand (100,000) in population, according to the latest census used for distributing state-shared taxes, then action on the petition as provided in §§ 6–1804, 6–1805 *shall* be held in abeyance for *fifteen (15) months* from the date of filing the petition; if within this period such existing city does not annex at least twenty per cent (20%) of the land area or thirty-five per cent (35%) of the population of such territory proposed for incorporation, then proceedings shall be continued as provided in §§ 6–1804, 6–1805 as though the petition had been filed at the conclusion of such fifteen (15) month period; if such existing city annexes at least said part of such territory within this period, then the petition shall be null and void and of no effect whatsoever. (Emphasis supplied)
>
> Provided, further, that whenever the governing body of any existing city affected by this section shall, by a resolution adopted by at least a two-third (⅔) majority vote of its governing body, indicate that it has no interest in the prior rights reserved to it by the provisions of

---

1. This is stipulated to be true.

this section, and, when a certified copy of that resolution is filed with the petition submitted to the county election commission which asks that the incorporation election be held, then the provision herein for holding the incorporation proceedings in abeyance for a period of fifteen (15) months shall be null and void and of no effect whatsoever, and the proceedings shall be continued as provided in this chapter just as though the proposed new incorporation were not within the specified distance of such existing city.

The county election commission shall have a period of fifteen (15) months; either after the filing of the petition; or after the expiration of the fifteen (15) month abeyance period reserved for existing cities; or after the filing of the resolution declaring no interest by the existing city, within which to publish notice of the election as required under § 6–1804.

■ It was the self-evident intent of the Legislature to preclude a proliferation of small cities clustered in contiguous communities with boundaries unidentifiable except by markers and metes and bounds descriptions bearing no reasonable relation to population groupings. It was further the obvious intent to favor existing municipalities. Section 6–1802 provides that this statutory scheme shall be liberally construed to effect its substantial objects.

■ Irrespective of purpose, the Legislature is in complete command of the creation of cities. It has mandated that a community within the two-mile limit must yield to an established city *for a period of fifteen months*. During this waiting period the established city may defeat the right of the potential city by the simple expedient of annexing twenty per cent of the land area or thirty-five per cent of the population. At the option of the established city it may disclaim any interest and permit the proposed incorporation.

The potential city has no option. Nor does the election commission.

■ The question recurs: Does the existing city have standing to sue to invalidate the charter of the proposed city when the two-mile provision and the resulting 15-month mandatory waiting period are ignored.

It does.

*To hold otherwise would be to say that the Legislature intended to give the established city a right which it could enforce unilaterally and out of court against a proposed city proceeding in obedience to the law but that it could not seek redress in the courts when the proposed city proceeds in defiance of the law.* Such a result would be absurd.

■ Our cases on standing to sue are founded on the principle that private citizens may not sue to challenge the corporate existence of a municipality, but that this is a public matter which may only be redressed in a proceeding prosecuted by a representative of the state. With this general rule of law we are in full accord.

We are urged to affirm on the authority of *City of Fairview v. Spears,* 210 Tenn. 404, 359 S.W.2d 824 (1962). We do not question the soundness of the rule of *Fairview,* but it has no application to this case. There *private citizens* sought to invalidate a municipal charter. The only question before the Court was the mechanics of the charter election.[2]

The Court in *Fairview* properly held that private citizens had no standing to sue "as such action will have to be brought in the name of the state." 210 Tenn. at 413.

■ Here, we do not deal with private citizens. We deal with a complaining municipality *for whose benefit a statutory proviso was obviously enacted.* It is beyond question that a Tennessee municipality is an agency of the state exercising a portion of the sovereign power of the state for the public good. *Bricker v. Sims,* 195 Tenn.

---

2. In the instant suit it is stipulated that the "mechanics" of speedy incorporation were complied with.

361, 259 S.W.2d 661 (1953). Most assuredly, an "arm of the state", and a repository of a portion of the state's sovereign power, has the standing to sue without recourse to an officer of the state. A contrary holding would force Collierville into another judicial circuit seeking the sufferance of a district attorney general of another constituency.

This case is further distinguishable from *Fairview* in that there the Court was dealing with mere technical irregularities; whereas, here we deal with controlling criteria in the form of conditions precedent to corporate existence.

*Cole v. Langford,* 221 Tenn. 458, 427 S.W.2d 562 (1968) is distinguishable since it involved a suit brought by private citizens.

The opinion of the Chancellor is

Reversed.

COOPER, C. J., and FONES, BROCK and HARBISON, JJ., concur.