# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
February 18, 2003 Session

## CITY OF OAKLAND, TENNESSEE v. LENITA McCRAW, ET AL.

**A Direct Appeal from the Chancery Court for Fayette County**
**No. 12253     The Honorable William H. Inman, Special Judge**

---

**No. W2002-01552-COA-R3-CV - Filed March 17, 2003**

---

This is a municipal incorporation case which tests the constitutionality of Chapter 129, Public Acts of 2001, codified as T.C.A. § 6-1-210(b) and also presents the issue of whether the action instituted by an adjoining incorporated municipality to invalidate the incorporation of the neighboring area is an election contest governed by the limitation period established by T.C.A. § 2-17-105. The trial court held that Chapter 129, Public Acts of 2001, is unconstitutional and further held that the incorporated municipality's action to invalidate the unincorporated area's referendum election and to revoke its charter is not an election contest governed by T.C.A. § 2-17-105. The territory seeking incorporation appeals, and the county election commission that certified the election appeals by the Tennessee Attorney General, defending the constitutionality of the subject Act. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

Brian L. Kuhn and Thomas J. Walsh, Jr., For Appellants, Town of Hickory Withe, Tennessee and Mayor David Shelton

Paul G. Summers, Attorney General and Reporter, Michael E. Moore, Solicitor General, Ann Louise Vix, Senior Counsel, Nashville, For Appellant, Members of the Fayette County Election Commission

Richard J. Myers, Memphis, For Appellee, City of Oakland

## OPINION

This case involves, *inter alia*, an analysis of the constitutionality of Chapter 129, Public Acts of 2001, codified as T.C.A. § 6-1-210(b) ("Chapter 129"). Defendant, Town of Hickory Withe,

Tennessee ("Hickory Withe"), is a territory of 2,574 people located in Fayette County. Plaintiff, city of Oakland, Tennessee ("Oakland"), is an existing municipality adjoining the proposed boundaries of Hickory Withe. On August 1, 1996, the residents of Hickory Withe held an incorporation election pursuant to the amendments posed in Chapter 666, Public Acts of 1996, to T.C.A. § 6-1-201, for the explicit purpose of voting on whether to incorporate the town. The result of the election was a majority vote in favor of incorporation. Soon thereafter, the Chancery Court of Fayette County, Tennessee declared Chapter 666 unconstitutional.[1]

In 1997, the Tennessee General Assembly amended T.C.A. § 6-1-201 through Chapter 98, Public Acts of 1997. The 1997 amendments reduced the number of actual residents required for the incorporation of a territory from 1,500 to "not fewer than two hundred twenty-five." Additionally, the 1997 amendments added the following subsections under Section 10 of the statute:

> (j) Any territory that has conducted an election under this section before the effective date of this act is deemed to have satisfied the requirements for incorporation under this chapter, including without limitation, any petition, time, notice and distance requirements of this chapter; any action of such newly incorporated municipality in such territory is hereby validated, ratified and confirmed, and no additional election under subsection (a) need be held. In addition, any ordinance of annexation by another municipality for any territory within the corporate limits such new municipality is void and of no effect.

> (k) If a territory has proposed to be incorporated under the provisions of this section after January 1, 1996, the new municipality shall have priority over any annexation ordinance of an existing municipality which encroaches upon any territory of the new municipality.

The 1997 amendments to T.C.A. § 6-1-201 were subsequently declared void pursuant to Article II, Section 17 of the Tennessee Constitution, as the Supreme Court determined that "Sections 7 through 11 of Chapter 98 of the 1997 Tennessee Public Acts are broader than and outside the caption of the Act." *Tennessee Mun. League v. Thompson*, 958 S.W.2d 333, 338 (Tenn. 1997).

In 1998, the General Assembly again entertained and approved amendments to T.C.A. § 6-1-201. Chapter 1101, Section 9(f)(3) of the Public Acts of 1998 provided:

> (A) Notwithstanding any other provision of law to the contrary, if any territory with not less than two hundred twenty-five (225) residents acted pursuant to Chapter 98 of the Public Acts of 1997, or Chapter

---

[1] According to the brief filed by the Attorney General on behalf of defendant members of the Fayette County Election Commission, the chancery court concluded that Chapter 666 was an "unconstitutional special act that violated Article 11, Section 9 of the Tennessee Constitution."

666 of the Public Acts of 1996 from January 1, 1996 through November 25, 1997, and held an incorporation election, and a majority of the persons voting supported the incorporation, and results of such election were certified, then such territory upon filing a petition as provided in § 6-1-202, may conduct another incorporation election.

(B) If such territory votes to incorporate, the new municipality shall have priority over any prior or pending annexation ordinance of an existing municipality which encroaches upon any territory of the new municipality. Such new municipality shall comply with the requirements of Section 13(c) of this act.

Soon after its passage, Chapter 1101, Section 9(f)(3) of Public Acts of 1998 was ruled an unconstitutional violation of Article XI, Section 8 of the Tennessee Constitution because it created a special classification in contravention of a general law, not supported by a rational basis.[2] *Town of Huntsville v. Duncan*, 15 S.W.3d 468, 473 (Tenn. Ct. App. 1999).

The residents of Hickory Withe petitioned to hold a second referendum on incorporation in September 1998. Acting under the authority of T.C.A. § 6-1-201 and the amendments espoused in Chapter 1101, Hickory Withe held a second incorporation election on October 24, 1998.[3] Hickory Withe again returned a majority vote in favor of incorporation, and approved a mayor-aldermanic charter. Defendant David Shelton ("Shelton") was elected mayor in the inaugural elections of January 1999.

Defendants concede that the "geographic area describing the proposed corporate limits of the Town of Hickory Withe includes territory within three miles of the boundaries of the Town of Oakland." The Attorney General, acting on behalf of the members of the Fayette County Election

---

[2] In its examination of this section, the court noted:

> Section 9(f)(3)(A) enables certain territories to hold elections even though they do not have at least 1,500 residents and are within three miles of an existing municipality. Furthermore, Section 9(f)(3)(B) gives these territories retroactive priority over any *prior or pending* annexation ordinances of adjoining municipalities, a priority not afforded to other territories seeking incorporation. Thus, Section 9(f)(3) creates a special classification of territories that may hold incorporation elections while other territories of similar size and location cannot do so under the applicable general law.

*Id.* at 472 (emphasis in original).

[3] As part of the incorporation and petitioning process, "Hickory Withe representatives prepared and submitted a Proposed Plan of Services ... which set forth the services to be provided, along with projected revenues and expenditures for the incorporated territory."

Commission ("Election Commission"), further acknowledges that "[t]he Town of Oakland annexed territory within the proposed corporate limits of the Town of Hickory Withe." According to the Affidavit of defendant Shelton, Hickory Withe has continuously operated as a municipal corporation since the October 1998 election.

In April 2001, the General Assembly undertook to amend T.C.A. § 6-1-210 via Chapter 129, Public Acts of 2001, adding the following subsection:

> (b) Notwithstanding any provision of this chapter or any other law to the contrary,
>
> IF the registered voters of any unincorporated territory approved a mayor-aldermanic charter and elected municipal officials, acting pursuant to the provisions of this chapter on or before December 31, 1999; AND
>
> IF, from the election of such officials until the effective date of this act, the territory has continuously functioned as a mayor-aldermanic municipality; AND
>
> IF the territory, between the date of such election and the effective date of this act, received and expended state funding allocated for municipalities; THEN
>
> The adoption of such charter, the incorporation of such territory as a mayor-aldermanic municipality and the election of such officials are hereby ratified and validated in all respects; and no flaw or defect or failure to comply with any requirement of incorporation, set forth in § 6-1-201(b), shall invalidate the territory's status as an incorporated municipality or invalidate any ordinance passed by the board.

Chapter 129, Public Acts of 2001.

Chapter 129 was codified as T.C.A. § 6-1-210(b), and took effect on April 26, 2001, while this action was still pending.

Oakland filed its original Complaint for Injunction and Declaratory Relief against defendants Lenita McCraw, Fayette County Administrator of Elections,[4] the Election Commission,[5] Shelton, and Hickory Withe on December 18, 1998. At the heart of Oakland's complaint is the allegation that Hickory Withe was incorporated pursuant to an unconstitutional Public Act, therefore rendering the town's election, and subsequent incorporation, invalid. Oakland advanced several arguments attacking the constitutionality of Chapter 1101, including assertions that this act violated Sections 8 and 9 of Article XI of the Tennessee Constitution.[6]

The Attorney General filed a Motion for Partial Dismissal pursuant to Tenn. R. Civ. P. 12.02(6), or, in the alternative, a Motion for Partial Summary Judgment. As the basis for these motions, the Attorney General rebuffed plaintiff's claims that Chapter 1101 was unconstitutional, and further asserted that "Section 9(f)(3) of the Act is a general law, does not interfere with vested rights, and is supported by a rational basis."

Mayor Shelton and the Town of Hickory Withe filed a joint Answer to Oakland's Complaint on February 26, 1999. In addition to denying plaintiff's allegations that Chapter 1101 was unconstitutional, defendants affirmatively pled that the action should be controlled by T.C.A. § 2-17-105 as an election contest. Defendants set forth the following affirmative defenses:

> 38. This Complaint should be dismissed for lack of standing of the Plaintiff.
>
> 39. The Complaint should be dismissed for lack of jurisdiction due to Plaintiff's failure to timely file a petition for writ of certiorari.
>
> 40. The Complaint should be dismissed for failure to be filed pursuant to Tennessee Code Annotated 2-17-101, et seq. and for failure to file within the time limit set forth in that statute.[7]
>
> 41. The Complaint should be dismissed based upon the equitable principles of estoppel and laches.

---

[4] Plaintiff voluntarily dismissed this cause of action as to defendant McCraw in July 2001, said dismissal being granted by the court in an Order entered July 12, 2001.

[5] The following individuals were sued in their official capacity as Election Commission members: Michael Thomas, Ernestine Brown, Maxine Middlecoff, Alice P. McClanahan, and William P. Yancey.

[6] Oakland properly notified the Attorney General of the State of Tennessee of its intent to question the constitutionality of Chapter 1101, Public Acts of 1998.

[7] T.C.A. § 2-17-105 (1994) provides:

> **Time for filing complaint.** – The complaint contesting an election under § 2-17-101 shall be filed within ten (10) days after the election.

On August 2, 1999, the Tennessee Supreme Court entered an Order designating Judge William H. Inman to hear the case "to its conclusion."

The Attorney General filed a Motion to Continue Trial on October 25, 1999. The Attorney General sought continuance on the grounds that defendant was planning to appeal the Court of Appeals' decision in *Town of Huntsville v. Duncan*, in which the court found that "Section 9(f)(3) of Chapter 1101 of the Public Acts of 1998 is unconstitutional because it offends Article XI, Section 8 of the Tennessee Constitution." The trial court granted defendant's motion, recognizing that "[a] principal issue in this litigation involves the constitutionality of Section 9(f)(3) of Chapter 1101, Public Acts of 1998."

On November 1, 1999, the Attorney General filed a joint Motion for Partial Summary Judgment asserting that defendants were entitled to judgment as a matter of law "as to the allegations that these Defendants violated T.C.A. § 6-1-202(a)." In May 2000, Oakland countered with its own Motion for Summary Judgment, insisting that *Huntsville v. Duncan* was controlling authority with regard to the issue of whether Chapter 1101 was constitutional. As further support for this assertion, Oakland noted that the Tennessee Supreme Court had recommended the Eastern Section's amended opinion in *Huntsville* for publication.

Upon the Supreme Court's Order of May 1, 2000 designating *Huntsville* for publication, the Attorney General filed a Notice of Withdrawal of defendants' motions for partial dismissal and partial summary judgment. Defendants, moreover, stipulated and agreed that "Section 9(f)(3) of 1998 Tenn. Pub. Acts Ch. 1101 is unconstitutional because it establishes a classification that is not supported by a rational basis as required by Article XI, Section 8 of the Tennessee Constitution." The trial court subsequently granted Oakland's Motion for Partial Summary Judgment to the extent that "Section 9(f)(3)(B) of Chapter 1101 of the 1998 Public Acts is unconstitutional as held by the Court of Appeals in *Town of Huntsville et al. v. Duncan*, C/A 03A01-9901-CH-00024."

On April 26, 2001, Chapter 129 was signed into law. Immediately thereafter, Oakland amended its complaint[8] to challenge the constitutionality of Chapter 129 and to further request that the court grant the following relief:

> The Court declare [Chapter 129] unconstitutional generally, and/or as it applies to the Plaintiff particularly and therefore void, and permanently enjoin enforcement of said Act.
>
> The Court grant plaintiff a permanent injunction prohibiting defendants from conducting any further elections of any kind for the Town of Hickory Withe.

---

[8] The court permitted Oakland to amend its complaint pursuant to a Consent Order entered May 9, 2001. We note that Oakland properly notified the Attorney General of its intent to challenge the constitutionality of Chapter 129.

Defendants Shelton and Hickory Withe filed a joint Answer in response to Oakland's amended Complaint in May 2001.[9] As part of their answer, defendants affirmatively pled "that the passage and signing into law of House Bill 1930/Senate Bill 1903, Chapter 129 of the Public Acts of 2001 (the "Ratification Act") has cured any alleged violations of T.C.A. 6-1-201 et seq. that occurred during the incorporation of Hickory Withe...."

On February 15, 2002, Oakland filed a Motion for Partial Summary Judgment challenging the constitutionality of Chapter 129 on the following basis:

> For grounds, Oakland will show that Chapter 129 is unconstitutional: pursuant to Const. Art. 11, § 9, because it is a special law regarding the incorporation of a municipality; and, pursuant to Const. Art. 11, § 8, because it is a special law in contravention of a general law that creates an arbitrary class, and whose status as such has already been adjudicated in *Town of Huntsville v. Duncan*, 15 S.W.3d 468 (Tenn. Ct. App. 1999). There is thus no genuine issue of material fact that as a matter of law Oakland is entitled to partial summary judgment that Chapter 129 is unconstitutional and thus void.

The Attorney General filed a response to plaintiff's motion, defending the constitutionality of Chapter 129. Specifically, the Attorney General argued that Chapter 129 does not create a special class, as it "validates the incorporation of every city that has incorporated in Tennessee since June 30, 1991 and is still actively operating." Alternatively, the Attorney General suggested that if Chapter 129 does, in fact, create a special class, such class is justified by a rational basis.

On April 15, 2002, the court entered an Order granting Oakland's Motion for Partial Summary Judgment. In concluding that Chapter 129 was an unconstitutional violation of Article XI, Section 9 of the Tennessee Constitution, the court noted:

> The intended effect of Chapter 129 is to validate the incorporation of various small territories – such as Hickory Withe – whether the general laws for incorporation were complied with or not. Stated differently, Chapter 129 undertook to remove the shadow of *Duncan* from various small towns whose creation and existence were mirror images of Helenwood, the town involved in *Duncan*. Chapter 129 thus squarely offends Article 11 Section 9 of the Constitution which declares "[t]he General Assembly shall by general law provide the exclusive methods by which municipalities may be created, merged, consolidated and dissolved and by which municipal boundaries may be altered." *See Frost v. City of Chattanooga*, 488 S.W.2d 370 (Tenn. 1972).

---

[9] The Attorney General filed an Answer to Oakland's Amended Complaint on May 25, 2001.

Oakland correctly points out that only those territories incorporated under Chapter 98 of the 1997 Public Acts, which was declared unconstitutional in **Tenn. Mun. League v. Thompson**, 958 S.W.2d 333 (Tenn. 1997), would require validation, if possible, and that the only difference between Chapter 129 (in controversy here) and Section 9(f)(3), (in controversy in **Duncan**), is "that the latter made the [various small towns] continued existence contingent upon another vote, while the former simply decrees it." Chapter 129 is a special law creating a number of small towns in stark contravention of the Constitution.

Seven days after the filing and entrance of this Order, Hickory Withe filed a motion seeking clarification of the status of the case, and the April 15 Order. The basis for Hickory Withe's motion was its assertion that the trial court's April 15 Order did not provide a final judgment or resolution on the following issues: (1) "whether the Court had jurisdiction of this matter because the Complaint was not filed within ten (10) days of the election pursuant to T.C.A. §§ 2-17-101 et seq., and specifically T.C.A. § 2-17-105 (1998);" (2) "whether or not laches and estoppel applied to the Town of Oakland Complaint;" and (3) "whether or not it should have been filed as a Petition for Certiorari within the proper deadline set forth in the Petition for Certiorari statute being T.C.A. § 27-9-101 et seq."

On May 13, 2002, the Attorney General, acting pursuant to T.R.C.P. 54.02, moved for entry of a final judgment on the constitutionality of Chapter 129. The Attorney General's motion was granted by Order of the trial court on June 10, 2002. Shortly thereafter, the Attorney General filed a Motion to Revise the June 10 Order, citing concern that the "Order may not be sufficient to support an appeal under Rule 54.02."

The Attorney General filed a Notice of Appeal, appealing the trial court's April 15 Order on June 27, 2002. Defendants Shelton and Hickory Withe followed the Attorney General's lead, and filed a joint Notice of Appeal on July 5, 2002, challenging the court's April 15 ruling. The Attorney General filed a Revised Notice of Appeal on July 9, 2002.

On October 9, 2002, the trial court entered a Final Order on the remaining issues[10] raised by Hickory Withe and Oakland in their cross motions for summary judgment. The court, in its Memorandum Opinion, stated with regard to these issues:

> Hickory Withe, in a fall-back position of sorts, argues that if it cannot prevail under the Ratification Act (declared invalid by this Court) its efforts to incorporate under prior law must be

---

[10] The following issues were withdrawn prior to entry of the Final Order: (1) whether the Plan of Services submitted by Hickory Withe complied with applicable statutory guidelines; and (2) whether Oakland's complaint was properly brought under T.C.A. § 29-35-101.

acknowledged as valid, notwithstanding its (1) admitted violation of the three mile limit, (2) its assertion that it did not rely exclusively upon a particular statute, (3) its concession that the boundaries of Hickory Withe cannot be judicially redrawn to obviate the three mile violation. Hickory Withe argues that the Oakland complaint is untimely because not filed within the familiar ten day period regarding election contests.

Keeping within the parameters of Rule 56, the undersigned is of the opinion that (1) T.C.A. §§ 2-17-101 *et seq*. is not implicated in this case, which does not involve an election contest. *See, e.g.*, *Brown v. Vaughn*, 310 S.W.2d 444 (Tenn. 1957), and *Forbes v. Bell*, 816 S.W.2d 716 (Tenn. 1991). The standing to sue issue is clearly not a defense to this action, *see, e.g.*, *Collierville v. Fayette County Election Commission*, 539 S.W.2d 334 (Tenn. 1976), and neither is the equitable principle of laches.

Based on these findings, the court granted Oakland's Motion for Summary Judgment, denied the motion of defendant Hickory Withe, and ordered the immediate dissolution of Hickory Withe's Charter.

On October 16, 2002, defendants Shelton and Hickory Withe filed a joint Notice of Appeal, challenging the Final Order of October 9. Defendants noted:

[T]hey currently have an appeal pending from a prior order of this Court in this case, that being an appeal from the Court's Order of April 15, 2002, as made final by the Court's order of June 10, 2002, holding that the Tennessee Ratification Act, Tenn.Code Ann. § 6-1-210(b), violates Article XI, Section 9 of the Tennessee Constitution. The Final Order which is the subject of the present appeal addresses other issues in the case. Approximately concurrently with the filing of this Notice of Appeal, a joint motion is being filed with the Court of Appeals on behalf of all parties to both appeals, moving the Court of Appeals to consolidate the two appeals and to expedite their resolution.

Therefore, on appeal, defendants Hickory Withe, Shelton, and Attorney General (acting on behalf of Election Commission) present the following issue for review: Whether Chapter 129, Public Acts of 2001, violates Article XI, Section 9, of the Tennessee Constitution. Defendants Hickory Withe and Shelton present for review the additional issue of whether the court lacks jurisdiction over this matter, "because the complaint was not filed within 10 days of the election in question, as required by T.C.A. § 2-17-101 et seq. governing election contests."

A motion for summary judgment should be granted when the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04. The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *See id*. In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court said:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id*. at 210-11 (citations omitted) (emphasis in original).

Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Since only questions of law are involved, there is no presumption of correctness regarding a trial court's grant of summary judgment. *See Bain*, 936 S.W.2d at 622. Therefore, our review of the trial court's grant of summary judgment is *de novo* on the record before this Court. *See Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

**I.**

Because this court is required to abstain from ruling on the constitutionality of a statute unless such a ruling is absolutely necessary, we begin by examining Hickory Withe's second issue, the question of whether the trial court lacks jurisdiction over this matter "because the complaint was not filed within 10 days of the election in question, as required by T.C.A. § 2-17-101 et seq. governing election contests."

In arguing that Oakland's complaint is time barred as an election contest under the 10-day statute of limitations set forth in T.C.A. § 2-17-105, Hickory Withe relies primarily on the Tennessee Supreme Court's decision in *Dehoff v. Attorney General*, 564 S.W.2d 361 (Tenn. 1978). *Dehoff* involved a referendum election, posing to voters the question of whether the term of the Rutherford County judge should be changed from an eight-year term to a four-year term. *Id*. at 62. A majority of the votes cast were for the four-year term. *Id*. More than three months following the election, citizens and registered voters of Rutherford County filed a declaratory judgment suit seeking to have the election declared invalid for, among other things, constitutional reasons. *Id*. The defendant denied that there were any grounds for declaring the election invalid and asserted the further defense

that the action should be dismissed because it was not filed within the ten-day statute of limitations as required by then T.C.A. § 2-1705.  *Id*. at 362-63.  The Supreme Court, in affirming the decision of the chancellor that the action was in reality an election contest and was barred because it was not timely filed, stated:

> Accordingly, in the case at bar, it is clear that insofar as the plaintiffs seek to contest the election of May 2, 1974, the applicable period of limitations is the ten day period prescribed by T.C.A., § 2-1705, and since the suit was not filed within that ten day period, it is, to that extent, barred as held by the Chancellor.
>
> The election code of this State does not specifically define "election contest."  However, in *Hatcher v. Bell*, Tenn., 521 S.W.2d 799 (1974), this Court, speaking through Mr. Justice Cooper, has given a broad interpretation to the words "election contest" as they are used in the election code.  Thus, we said:
>
> > There is no question but that a suit which attempts to go behind the election returns, to recount the votes or otherwise assail the manner and form of the election is an election contest.  (Citations omitted).  But an election contest is not limited to an attack on the integrity of the election process, nor is it limited to an attack by a candidate who makes claim to the office.
>
> *          *          *
>
> We also said in the *Hatcher* case that the target of an election contest is the validity of the election.

*Id*. at 363.

Concerning contested elections, T.C.A. § 2-17-101 (1994) provides:

> **2-17-101.  Jurisdiction - Standing. -** (a) Except as otherwise expressly provided in this chapter, election contests shall be tried in the chancery court of the division in which the defendant resides.  The chief justice of the supreme court shall assign a chancellor from a different division to decide a contested election of chancellor.
>
> (b) The incumbent office holder and any candidate for the office may contest the outcome of an election for the office.  Any campaign committee or individual which has charge of a campaign for the

adoption or rejection of a question submitted to the people may contest the election on the question.

We believe that Hickory Withe's reliance on **Dehoff** is misplaced. Under **Dehoff**, the plaintiffs had standing to file an election contest. **See Brackin v. Sumner County**, 814 S.W.2d 57, 61 (Tenn. 1991); **Rodgers v. White**, 528 S.W.2d 810, 811 (Tenn. 1975).

Oakland, in contrast, has no standing to proceed in an election contest concerning a referendum involving the citizens of the community of Hickory Withe. The City of Oakland is not qualified to vote in that referendum, and it is not a "campaign committee or individual which has charge of a campaign for the adoption or rejection of a question submitted to the people." T.C.A. § 2-17-101(b). To adopt Hickory Withe's argument would effectively deny Oakland a remedy while it obviously has a remedy in a quo warranto proceeding. **See Corp. of Collierville v. Fayette County Election Comm'n**, 539 S.W.2d 334 (Tenn. 1976) (wherein the town of Collierville, Tennessee filed a proceeding to declare invalid the incorporation of Piperton for violation of the statute proscribing encroachment within two miles of Collierville's boundaries). The opinion presented the question: "Does the existing city have standing to sue to invalidate the charter of the proposed city when the two-mile provision and the resulting 15-month mandatory waiting period are ignored." **Id.** The Supreme Court answered this question in the affirmative. **Id**. at 336. The trial court had sustained a motion to dismiss, holding that since this was a quo warranto proceeding, Collierville had no standing to sue, as it would have to be brought in the name of the district attorney general. **Id**. at 335. The Supreme Court's ruling was premised on its finding that Collierville, as an existing city, was an "'arm of the state,' and a repository of a portion of the state's sovereign power," which in turn conferred the right to sue to challenge the corporate existence of Piperton. **Id**. at 337.

From the above authorities, we conclude that Oakland's suit to challenge the corporate existence of Hickory Withe is not an election contest, and therefore not barred by the ten-day limitation provision established for election contests in T.C.A. § 2-17-105.

## II.

The second issue presented for review is whether Chapter 129, codified as T.C.A. § 6-1-210(b) (2002), violates the Municipal Boundaries Clause of Article XI, Section 9. Statutes enacted by the legislature are presumed constitutional. **Vogel v. Wells Fargo Guard Servs.**, 937 S.W.2d 856, 858 (Tenn. 1996). Thus, we must "indulge every presumption and resolve every doubt in favor of constitutionality." **Id**.

Oakland alleges that Chapter 129 is a special law in violation of Article XI, Section 9, of the Tennessee Constitution as it validates the corporate existence of a "handful class" of municipalities, despite said municipalities' failure to comply with the three mile incorporation requirement set forth in T.C.A. § 6-1-201(b). Defendants counter that Chapter 129 is a general law under the Municipal Boundaries Clause and, in the event that Chapter 129 creates a special classification, the classification is valid as it is supported by a rational basis.

-12-

The Municipal Boundaries clause of Article XI, Section 9 of the Tennessee Constitution provides:

> The General Assembly shall by ***general law*** provide the exclusive methods by which municipalities may be created, merged, consolidated and dissolved and by which municipal boundaries may be altered.

Tenn. Const. art. XI, § 9 (emphasis added).

Under T.C.A. § 6-1-201, a territory is entitled to incorporate if it complies with certain requirements. Included among these requirements is the provision that "no unincorporated territory shall be incorporated within three (3) miles of an existing municipality...." It is undisputed that Hickory Withe violated T.C.A. § 6-1-201(b) by incorporating within three miles of Oakland's corporate limits. Despite this infraction, Hickory Withe maintains that its corporate existence is validated by Chapter 129.

To reiterate, Chapter 129, codified as T.C.A. § 6-1-210(b) (2002), provides:

> Notwithstanding any provision of this chapter or any other law to the contrary,
>
> IF the registered voters of any unincorporated territory approved a mayor-aldermanic charter and elected municipal officials, acting pursuant to the provisions of this chapter on or before December 31, 1999; AND
>
> IF, from the election of such officials until April 26, 2001, the territory has continuously functioned as a mayor-aldermanic municipality; AND
>
> IF the territory, between the date of such election and April 26, 2001, received and expended state funding allocated for municipalities; THEN
>
> The adoption of such charter, the incorporation of such territory as a mayor-aldermanic municipality and the election of such officials are hereby ratified and validated in all respects; and no flaw or defect or failure to comply with any requirement of incorporation, set forth in § 6-1-201(b), shall invalidate the territory's status as an incorporated municipality or invalidate any ordinance passed by the board.

We turn to this court's decision in ***Town of Huntsville v. Duncan***, 15 S.W.3d 468 (Tenn. Ct. App. 1999) for guidance in determining whether Chapter 129 is a special law in violation of the Municipal Boundaries Clause of Article XI, Section 9.[11] Although ***Huntsville*** was not decided upon the same constitutional provision as the one before this court, the factual and legal analysis instituted by the ***Huntsville*** court is analogous to the situation at bar. In ***Huntsville***, the plaintiffs filed suit challenging the constitutionality of Chapter 1101, Public Acts of 1998. ***Id***. at 469. Defendant town of Helenwood, an adjoining territory of less than 1,500 people, held an incorporation election in November 1997 pursuant to Chapter 1101. ***Id***. at 470-71. A majority of voters voted in favor of incorporation, and Helenwood was thereby incorporated despite the fact that it had less than 1,500 citizens and was situated within three miles of Huntsville. ***Id***. at 471.

---

[11] Defendants appear to contend that ***Huntsville*** is not controlling authority because the statute involved in that case was ruled unconstitutional and invalidated on the basis that the "act created a classification that was not supported by a rational basis under Article XI, Section 8 of the Tennessee Constitution." Because ***Huntsville*** involved the application of Section 8, not Section 9, defendants suggest that ***Huntsville*** is not dispositive of the issue of whether Chapter 129 violates the Municipal Boundaries Clause of Section 9.

Article XI, Section 8 provides:

> The Legislature shall have no power to suspend any general law for the benefit of any particular individual, nor to pass any law for the benefit of individuals inconsistent with the general laws of the land; nor to pass any law granting to any individual or individuals, rights, privileges, immunitie, [immunities] or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law. ***No corporation shall be created or its powers increased or diminished by special laws but the General Assembly shall provide by general laws for the organization of all corporations, hereafter created, which laws may, at any time, be altered or repealed, and no such alteration or repeal shall interfere with or divest rights which have become vested***.

Tenn. Const. art. XI, § 8 (emphasis added).

According to the court in ***Huntsville***, "Tennessee courts have long recognized the similarity between Article XI, Section 8, and the Equal Protection Clause of the Federal Constitution, and have therefore applied an equal protection analysis to constitutional challenges brought pursuant to Article XI, Section 8." ***Id***. at 472 (citations omitted). Section 8 is a broadly defined equal protection provision that assigns to the General Assembly the power to organize corporations pursuant to general laws, thereby prohibiting the creation of corporations through special laws.

In contrast, Section 9 is a more direct and precisely defined equal protection provision that gives the General Assembly the exclusive power to create municipalities by general law. However, because Hickory Withe is currently operating as a municipal corporation, and recognizing that Sections 8 and 9 are both equal protection provisions that prohibit the creation of corporations and municipalities respectively, we find that ***Huntsville*** is, at a minimum, persuasive authority with regard to the issue of whether Chapter 129 is a special law in violation of the Municipal Boundaries Clause.

Plaintiff, Town of Huntsville, "specifically contest[ed] Section 9(f)(3) of Chapter 1101, which permit[ted] certain territories to hold incorporation elections even though these territories [did] not satisfy the minimum requirements for such elections as set forth in the general law." *Id*. at 469-70 (citing T.C.A. § 6-1-201 (1998)). The parties filed cross motions for summary judgment, and the trial court granted summary judgment in favor of defendants, "finding that Section 9(f)(3) is constitutional." *Id*. at 470. Plaintiffs raised five issues on appeal, including the separate issues of whether Section 9(f)(3) violated Article XI, Section 8, and Article XI, Section 9. *Id*.

Considering first the issue of whether Section 9(f)(3) violated Section 8 by "(a) creating a class of territories that can incorporate despite the general population and distance requirements applicable to municipalities statewide, [and] (b) without any rational basis for the classification," the court of appeals concluded that "Article XI, Section 8 is implicated in this case because Section 9(f)(3) contravenes the general law pertaining to the incorporation of municipalities." *Id*. at 471-72. As support for this holding, the court noted that the statute in question enabled a specific class of territories to hold incorporation elections despite their failure to comply with the population and distance requirements set forth in T.C.A. § 6-1-201. *Id*. at 472. The court further noted:

> Section 9(f)(3) gives these territories retroactive priority over any
> *prior or pending* annexation ordinances of adjoining municipalities,
> a priority not afforded to other territories seeking incorporation.
> Thus, Section 9(f)(3) creates a special classification of territories that
> may hold incorporation elections while other territories of similar size
> and location cannot do so under the applicable general law.

*Id.,* (Emphasis in original).

Based on its conclusion that Section 9(f)(3) created a special classification, unsupported by a rational basis (a point that will be discussed in further detail later in this opinion), the court pretermitted all other issues presented on appeal, including the issue of whether Section 9(f)(3) violated Article XI, Section 9. *Id*. at 473.

Similar to Chapter 1101, Chapter 129 enables a specific class of territories to incorporate despite failure to comply with a particular provision established in T.C.A. § 6-1-201. Specifically, Chapter 129 validates the corporate existence of certain territories, including Hickory Withe, even though these territories violated the three mile requirement set forth in T.C.A. § 6-1-201(b). Further, we note that Chapter 129 validates the corporate existence of territories that encroach upon the three mile limit in violation of T.C.A. § 6-1-201(b), but does not validate the incorporation of territories that fail to comply with the population provision of (a)(1), the plan of services requirement under (a)(2), and the public hearing provision in (a)(3). By restricting the validation provision to those territories that failed to comply with the distance requirement set forth in T.C.A. § 6-1-201(b), and thereby refusing or neglecting to extend the same privilege or right to those territories whose only incorporation flaw was its failure to comply with the population, plan of services, or public hearing

requirements of T.C.A. § 6-1-201(a), the legislature further limited the class of territories who are entitled to benefit from Chapter 129.

By Hickory Withe's own admission, Chapter 129 currently applies to only ten municipalities in Tennessee. Under the language of this statute, only territories in which registered voters "approved a mayor-aldermanic charter and elected municipal officials, acting pursuant to the provisions of this chapter *on or before December 31, 1999*," fall within the purview of subsection (b). (emphasis added). This date restriction effectively prohibits the inclusion of any new territory into this group. Simply stated, subsection (b) only applies to the ten specific territories acknowledged by Hickory Withe, as the restriction date precludes application to any territory that was not approved as a mayor-aldermanic municipality by a majority of registered voters, in an election held on or before December 31, 1999.

For these reasons, we hold that Chapter 129 creates a special classification, and is therefore a special law in violation of Article XI, Section 9.

Having determined that Chapter 129 is a special law in violation of Article XI, Section 9, we now consider whether there is a rational basis supporting the special classification created by this statute. We begin by noting that there is no Tennessee case law directly stating that a special law violating Section 9 is valid if supported by a rational basis. Moreover, we do not hold that a court is required to conduct a rational basis analysis when considering the constitutionality of a statute under Article XI, Section 9. However, we recognize that the Tennessee Supreme Court, in the 1990 case of *Hart v. City of Johnson City*, applied a rational basis analysis in determining whether population classifications set out in an amendment to a statute authorizing municipal annexation contests violated Article XI, Section 9 because the amendment was a special law. 801 S.W.2d 512, 515 (Tenn. 1990) ("[W]e have never upheld class legislation in annexation statutes. Such statutes are subject to an entirely different constitutional prohibition, the Municipal Boundaries Clause found in art. XI, § 9."). We therefore proceed with an analysis of whether there is a rational basis to support Chapter 129.

"To withstand scrutiny under the rational basis standard, a classification must 'have some basis which bears a natural and reasonable relation to the object sought to be accomplished, and there must be some good and valid reason why the particular individual or class upon whom the benefit is conferred, or who are subject to the burden imposed, not given to or imposed upon others, should be so preferred or discriminated against.'" *Huntsville*, 15 S.W.3d at 472 (citing *State v. Nashville, C. & S. L. R. Co.*, 124 Tenn. 1, 135 S.W. 773, 775 (1911); *Knoxville's Cmty. Dev. Corp. v. Knox County*, 665 S.W.2d 704, 705 (Tenn. 1984)). The reasonableness of a classification is determined upon the facts of the particular case. *Huntsville*, 15 S.W.3d at 472 (citing *Estrin v. Moss*, 221 Tenn. 657, 430 S.W.2d 345, 349 (1968)).

In his brief, the Attorney General asserts that Chapter 129 is clearly supported by a rational basis, and further notes:

The Ratification Act promotes predictability and protects the interests of members of the public who have relied on the corporate existence of these cities. It protects these cities from operating under the threat that their existence may, any time in the future, be challenged and even extinguished based on a technical failure many years in the past.

Hickory Withe echoes the rationale advanced by the Attorney General that Chapter 129 creates predictability and stability, and further states:

In effect, the legislators exercised their judgment to declare that those groups of citizens who have made a serious and sustained effort to organize and function as a municipality, and who have been operating as such for some period of time, deserve to be recognized as such. Moreover, with the passage of time, such communities typically have taken actions, have made contractual promises, have incurred debts, have begun projects, and in general have created expectations, all of which would be unduly disrupted if they are suddenly subject to challenge. Indeed, in this very case, the challenge came on the eve of the election of officers, after campaigns had been conducted.

While we are sympathetic to the notion that Chapter 129 creates stability and predictability for residents of the ten territories covered under this provision, including Hickory Withe, we must also consider the interests of existing municipal corporations such as Oakland, who are also directly affected by this statute. Under T.C.A. § 6-1-201, existing municipal corporations are entitled to a protected three mile zone between their corporate boundaries and the boundaries of municipalities seeking incorporation. By exempting specific territories from the three-mile incorporation requirement set forth in T.C.A. § 6-1-201, Chapter 129 threatens the reasonable expectations of existing municipal corporations.

With regard to Hickory Withe's assertion that the expenditure of time and money or the creation of contracts in furtherance of, or reliance upon, incorporation provides a rational basis for the statute in question, we note that Oakland filed its complaint challenging the validity of the October 24, 1998 election less than two months after the election. There is no indication in the record that Hickory Withe entered into any contracts or incurred any debts during this time. In his affidavit, Mayor Shelton averred that he "spent a considerable amount of personal money and time running for offices for the Town of Hickory Withe," and noted that numerous citizens volunteered "thousands of hours" in helping to organize the town. Mayor Shelton additionally suggested that the town provided generous financial support to its volunteer fire department.[12] In *Huntsville*, this court determined that "[t]he mere fact that residents ... expended money and effort to incorporate cannot justify exemption from a general law...." *Town of Huntsville v. Duncan*, 15 S.W.3d 468, 473

---

[12] We note that the fire department was incorporated in February 1999, more than one year after Oakland filed its complaint

-17-

(Tenn. Ct. App. 1999). On this basis, we find that the mere fact that Mayor Shelton and other candidates spent time and money in campaigning for public office, even when combined with evidence that several citizens volunteered thousands of hours toward the organization of Hickory Withe, does not constitute a rational basis in support of the special classification established by Chapter 129.

As a final note, we are unable to "discern a rational difference" between Hickory Withe in the one instance, and the hundreds of other small Tennessee communities who are prohibited from seeking incorporation because these communities lack 1,500 or more citizens, encroach too closely upon the boundaries of existing municipalities, or failed to comply with the plan of services or public hearing requirements set forth in T.C.A. § 6-1-201. *See Huntsville*, 15 S.W.3d at 473. "The record does not reflect any intrinsic difference between the community of [Hickory Withe] and these other small communities." *Id*. We find simply that there is no rational basis to distinguish Hickory Withe from other similar small communities.

Because we find no rational basis to support the special classification created by Chapter 129, we hold that Chapter 129 is unconstitutional as it creates a special classification, unsupported by rational basis, in contravention of Article XI, Section 9, of the Tennessee Constitution.

## III.

In conclusion, we affirm the trial court's order granting partial summary judgment for plaintiff, City of Oakland, holding that Chapter 129, Public Acts of 2001, violates Article XI, Section 9, of the Tennessee Constitution. We further affirm the trial court's order granting Oakland's Motion for Summary Judgment holding that Oakland's action to invalidate Hickory Withe's referendum election and to revoke its charter is not an election contest governed by the 10-day limitation period for such actions. Costs of appeal are assessed against defendants Town of Hickory Withe, David Shelton, and Members of the Fayette County Election Commission and their sureties.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.