# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 22, 2013 Session

## CITIMORTGAGE, INC. v. ANGELINE RENEE DRAKE

**Appeal from the Circuit Court for Hamilton County**
**No. 11C684     W. Jeffrey Hollingsworth, Judge**

---

**No. E2012-00722-COA-R3-CV-FILED-FEBRUARY 21, 2013**

---

This is one of three cases consolidated for oral argument. In each case, the following happened: (1) the borrower defaulted on his or her home loan and the lender foreclosed by non-judicial action, a procedure authorized by the deed of trust; (2) the purchaser at the trustee's sale sought possession through an unlawful detainer action; (3) the borrower filed a counterclaim asserting that the non-judicial foreclosure process violates the Tennessee Constitution and is against public policy; and (4) the trial court dismissed the counterclaim and granted possession to the purchaser. The present case went off on summary judgment. The borrower appeals. We affirm the judgment of the trial court in all respects.

**Tenn. R. App P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

Whitney Durand, Chattanooga, Tennessee, for the appellant, Angeline Renee Drake.

Misty Smith Kelley, Chattanooga, Tennessee, and Bradley E. Trammel, Memphis, Tennessee, for the appellee, CitiMortage, Inc.

Robert E. Cooper, Jr., Attorney General and Reporter; William E. Young, Solicitor General; and Alexander S. Rieger, Assistant Attorney General, General Civil Division, Nashville, Tennessee, for the intervener, Tennessee Attorney General.

# OPINION

## I.

On or about February 28, 2006, Angeline Renee Drake ("the Borrower") signed a promissory note evidencing a home loan in the amount of $104,500. The note was secured by a deed of trust on the Borrower's home at 3804 Youngstown Road, Chattanooga ("the Property"). The beneficiary under the deed of trust was FMF Capital LLC, the original lender. Eventually, the note and deed of trust were assigned to CitiMortgage, Inc. and a substitute trustee was appointed.

Section 22 of the deed of trust gives the lender the ability to sell the Property at a public auction subject to the following procedure:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. . . .
>
> If Lender invokes the power of sale, Trustee shall give notice of sale by public advertisement in the county in which the Property is located for the time and in the manner provided by Applicable Law, and Lender or Trustee shall mail a copy of the notice of sale to Borrower in the manner provided in Section 15. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and under the terms

-2-

designated in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. . . . If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. . . .

In June 2007, the Borrower fell behind in her monthly payments. From June 2007 to June 2009, she remained between one to three months behind. Between January 2009 and August 2009, the Borrower made only three payments. Her last payment was a partial payment in September 2009. Between June 2008 and June 2009, the Borrower was sent multiple letters informing her she was in default and that failure to cure the default might result in acceleration of all sums due and foreclosure on the Property. The Borrower applied for a loan modification but failed to make the monthly payments required to qualify for the modification. The Borrower was notified that her loan would not be modified. On July 7, 2010, the Borrower was notified by counsel for CitiMortgage that the debt had been accelerated because of her default. On July 26, 2010, counsel for CitiMortgage sent a letter to the Borrower by certified mail informing her of foreclosure by trustee's sale scheduled for August 23, 2010. Notice of the sale was published in the Hamilton County Herald on July 30, 2010, August 6, 2010 and August 13, 2010.

The Property was sold at auction on September 20, 2010, at the Hamilton County Courthouse. CitiMortgage was the high bidder at $79,993. The trustee's deed to CitiMortgage was recorded September 24, 2010.

The Borrower refused to vacate the Property and CitiMortgage filed this action as an unlawful detainer action in general sessions court. The detainer case was stayed in sessions court pending resolution of a federal action the Borrower filed challenging the constitutionality of the foreclosure. The federal court in that case held that the foreclosure did not offend the federal constitution because it involved only private enforcement of contract rights rather than state action. *Drake v. Citimortgage, Inc*, No. 1:10-CV-305, 2011 WL 1396774 at *4 (E.D. Tenn., April 13, 2011)("*Drake I*"). The federal court declined to address the claims based on state law and dismissed the case in its entirety. After the dismissal in *Drake I*, the Borrower removed the present case to the trial court and filed an amended answer that includes a counterclaim challenging the constitutionality of the private

"foreclosure process." The counterclaim alleges that the "foreclosure process" is in "violation of the Law of the Land Provision (Tenn. Const. Art. I, § 8), the Open Courts Clause (Tenn. Const. Art. I, § 17), and the Right to a Remedy Clause (Tenn. Const. Art. I, § 17)" of the Tennessee Constitution. The counterclaim asserts that "[t]he following statutes are wholly or partially unconstitutional: Tenn. Code Ann. §§ 35-5-101, 35-5-103, 35-5-106, 29-23-201, 29-18-119(c), and 29-18-125." The counterclaim further alleges

> that the protections given to [the Borrower] under Tennessee law are illusory, and that the Tennessee statutes . . . are unconstitutional as actually applied. Tennessee's judicial system fails to protect her essential property rights while professing to do so. A borrower must run one or more of three very difficult obstacle courses to contest foreclosure. For all practical purposes, running any of the three courses is impractical if not impossible, causing Tennessee attorneys to refuse to take virtually all wrongful foreclosure cases.
>
> To illustrate the first course, a suit to enjoin foreclosure is the earliest possible, and most desirable, form of attack upon wrongful foreclosure, but it is not practical. The homeowner usually must do all of the following in a 15-day period: examine a little-read newspaper like the *Hamilton County Herald* when publication of notice occurs; find a lawyer willing to take the case or represent himself or herself; give notice to the lender of the intent to seek an injunction; prove that the notice has been . . . served or show that proof of service is not required; file a complaint in the proper court; and seek an injunction from a judge or chancellor. It is virtually impossible for homeowners to utilize this method of challenging a wrongful foreclosure.
>
> The second course involves the assertion of an affirmative defense or a counterclaim in a detainer action brought by the lender. It is in the interest of lenders to bring detainer actions soon after foreclosure occurs. They usually do so in a period of days or a short number of weeks. Personal service of process is not required to commence a detainer proceeding, and the posting of notice at the property often occurs. The detainer action takes place rapidly. Typically, the trial is about 14 days after process is served. Tenn. Code Ann. § 29-18-119(c) recites: "The estate, or merits of the title, shall not be inquired into" in a detainer

-4-

action. This statute indicates that a homeowner may not raise substantive issues by affirmative defenses or counterclaims in detainer actions. Even if such defenses and counterclaims may be raised, this still means that, during approximately 14 days, the homeowner must find a foreclosure lawyer, reach a satisfactory fee agreement with him or her, file an appropriate pleading, and litigate the issue. Alternatively, the homeowner can theoretically appeal to Circuit Court for a de novo hearing without having raised the issue of wrongful foreclosure previously in General Sessions Court. But this presents separate and usually insurmountable problems. The biggest of them is furnishing a bond in the amount of a full year's rent. As still another illusory alternative, the homeowner may seek to remove the case to the Circuit Court pursuant to Tenn. Code Ann. § 16-15-732. But this alternative is available only when "the defendant's defense will be of such a complex or expensive nature that the interests of justice require that the defendant not be required to present the defense at the general sessions level." Few defendants will be able to persuade a General Sessions Court Judge that their cases involve such complexity or expense, unlike this case in which constitutional issues are involved. Thus, once again, there is no practical remedy provided in Tennessee courts for raising substantive arguments in a detainer action.

The third course of action entails the filing of a suit to set aside a wrongful foreclosure. However, the grounds for doing so are extremely limited: "If a foreclosure sale is legally held, conducted and consummated, there must be some evidence of irregularity, misconduct, fraud, or unfairness on the part of the trustee or the mortgagee *that caused or contributed to an inadequate price*, for a court of equity to set aside the sale." *Holt v. Citizens Central Bank*, 688 S.W.2d 414 (Tenn. 1984)(emphasis added). If this kind of suit were not difficult enough already, *Davis v. Williams*, 2011 WL 335069 (Tenn. App. Jan. 31, 2011) makes it impossible for almost all borrowers. It holds that a litigant *must* raise constitutional (and presumably other substantive) issues by an affirmative defense or counterclaim in a detainer action or forever hold his peace

because res judicata prohibits a later suit to set aside the foreclosure.

(Emphasis in original; paragraph numbering in original omitted.) The counterclaim also alleges that the statutes, by allowing non-judicial foreclosure and possession to the purchaser through a detainer action, violate public policy.

The Attorney General intervened to defend the constitutionality of the challenged statutes. The Attorney General and CitiMortgage each filed a motion to dismiss the counterclaim for failure to state a claim. The motions assert that the state constitutional claims fail as a matter of law because (1) non-judicial foreclosure does not involve state action and (2) the statutes are an expression of public policy and therefore do not violate public policy. The trial court granted the motions to dismiss.

CitiMortgage then moved for summary judgment on its unlawful detainer claim. CitiMortgage submitted certified copies of the recorded deed of trust and the trustee's deed; the affidavit of a CitiMortgage employee that the required notices were mailed to Ms. Drake on multiple occasions, along with copies of the notices; and the affidavit of CitiMortgage's counsel that the notice of the foreclosure sale was mailed to the Borrower and published in the Hamilton County Herald newspaper. The Borrower did not submit an affidavit of her own disputing any of the assertions made on behalf of CitiMortgage, but she argued that the affidavits CitiMortgage submitted were insufficient proof of default, notice and publication, because there was no proof of mailing and no affidavit from the newspaper. The trial court granted the motion for summary judgment.

II.

We decline to use the phraseology of Borrower's statement of the issues because it is in the form of a summary of her *arguments*. CitiMortgage has accurately phrased the issues raised by the Borrower:

> Was the Trial Court correct in dismissing [the Borrower's] constitutional and public policy challenges to the Tennessee non-judicial foreclosure process for failure to state a claim as a matter of law?

> Was the Trial Court correct in granting CitiMortgage, Inc.'s motion for summary judgment on its claim for unlawful detainer?

III.

The determination of whether a statute is unconstitutional

> is a question of law, which we review *de novo*, affording no presumption of correctness to the trial court's conclusion. *See Lynch v. City of Jellico*, 205 S.W.3d 384, 390 (Tenn. 2006). In addressing this issue, we must be mindful that "[s]tatutes enacted by the legislature are presumed constitutional. Thus, we must 'indulge every presumption and resolve every doubt in favor of constitutionality.' " *City of Oakland v. McCraw*, 126 S.W.3d 29, 38 (Tenn. Ct. App. 2003) (*citing Vogel v. Wells Fargo Guard Servs.*, 937 S.W.2d 856, 858 (Tenn. 1996)).

*Randstad North America, L.P. v. Tennessee Dept. of Labor and Workforce Development*, 372 S.W.3d 98, 101 (Tenn. Ct. App. 2011). The determination of whether a contract, or some procedure specified in a contract, is in violation of public policy is also a question of law which we review de novo. *Baugh v. Novak*, 340 S.W.3d 372, 381 (Tenn. 2011). Also,

> [t]he standard of review of a summary judgment determination is *de novo* without any presumption of correctness accorded the trial court's judgment. *See McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 894 (Tenn.1996); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Our only task in deciding a motion for summary judgment is to determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993).

*Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002).

IV.

Although the trial court did not explicitly state the reasons for dismissing the counterclaim, the parties agree that the court dismissed it because it found that foreclosure involves private action rather than state action. On appeal, the Borrower argues that state action is not required to invoke the state constitutional provisions, and, even if it were, such

action is present in this case. CitiMortgage and the Attorney General argue that state action is required and that it is not present.

The central theme of the Borrower's argument is that the power of private sale in the deed of trust allows a home to be sold without a borrower even knowing that it is going to be sold. She contends that the problem is compounded because the purchaser at a foreclosure sale can obtain possession through a detainer action, in which the borrower is prohibited from challenging the validity of the purchaser's title. Thus, she contends that she lost her home without ever having reasonable notice and an opportunity to be heard which are essential to due process of law.

The Borrower made these same arguments in **Drake I**. The district court held that, with regard the federal constitution, the allegations in the counterclaim did not set forth a prima facie case of state action for the following reasons:

> It is well-established that the Fourteenth Amendment Due Process clause applies to state action, not private conduct. *See* **Flagg Brothers, Inc. v. Brooks**, 463 U.S. 149, 156 (1978). Thus, on its face, Plaintiff's complaint seems not to state a claim since the non-judicial foreclosure at issue is *by definition* a contractually-determined act involving private parties, not the state. Plaintiff recognizes this hurdle to her claim, but argues that Tennessee statutes recognizing, enforcing, and regulating non-judicial foreclosure effectively "convert" such foreclosures into state action. This argument is unpersuasive.
>
> "[T]he actions of a private party will not be attributed to the state unless the state actually compels the action." **King v. Emery**, No. 87-5419, 1988 WL 1101, *1 (6th Cir. 1988); *see also* **United States v. Coleman**, 628 F.2d 961, 964 (6th Cir. 1980) ("where state involvement in private action constitutes no more than acquiescence or tacit approval, the private action is not transformed into state action even if the private party would not have acted without the authorization of state law"). Plaintiff provides a laundry-list of terms in Tennessee's non-judicial foreclosure statutes that purportedly make the state "pervasively involved" in the foreclosure process. However, these provisions show only that Tennessee recognizes the right of private parties to contract for power of sale, provides some default terms in the event contracts authorizing power of sale are silent on some

-8-

issues, and will enforce such contracts. They do not show that Tennessee compels non-judicial foreclosure, or is otherwise so entwined with the non-judicial foreclosure process that its apparent private character is only illusory. In fact, *if Tennessee's recognition and willingness to enforce private contracts authorizing non-judicial foreclosure amounts to State action, it is difficult to see why the enforcement of almost any private contractual remedy in Tennessee would not be State action*.

The conclusion that Tennessee's statutes recognizing and enforcing non-judicial foreclosure do not "convert" such foreclosures into State action is consistent with the consensus of courts, including the Sixth Circuit and this District. In **King**, 1988 WL 1101 at *1, the Sixth Circuit held Tennessee's statutory recognition of non-judicial foreclosures "falls short of the compulsion required to establish state action," and affirmed this Court's dismissal of a case bringing constitutional challenges to the statutes. On facts quite similar to the case at bar, the Sixth Circuit stated:

> . . . . The Supreme Court has held that where state involvement in a private action constitutes no more than acquiescence or tacit approval, the private action is not transformed into state action even if the private party would not have acted without authorization of state law. **Flagg Bros. v. Brooks**, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978). Indeed, under the **Flagg** standard, the actions of a private party will not be attributed to the state unless the state actually compels the action. **United States v. Coleman**, 628 F.2d 961, 964 (6th Cir.1980).

> Tennessee does not compel the use of private nonjudicial foreclosure sales in financing agreements, but rather allows the creditor to choose between judicial sale or private nonjudicial sale. . . . This recognition of private nonjudicial foreclosure falls short of the

compulsion required to establish state action. *See Flagg*, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185; *Adikes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

*King*, 1988 WL 1101 at *1. . . .

Other jurisdictions, too, have found non-judicial foreclosures are not state action. In *Garfinkle v. Superior Court of Contra Costa Cnty.*, 21 Cal.3d 268, 146 Cal.Rptr. 208, 578 P.2d 925 (1978), the California Supreme Court, in a quite thorough opinion, held non-judicial foreclosure was not state action either for purposes of the 14th Amendment or the California Constitution's similar provision. The court recognized the non-judicial foreclosure statutes at issue did not compel the inclusion of a power of sale in a deed, but only "restrict and regulate the exercise of the power of sale once a choice has been made by the creditor to foreclose the deed of trust in that manner." *Id*. at 279, 146 Cal.Rptr. 208, 578 P.2d 925. The court addressed and rejected many contentions of the petitioner similar to those contained on Plaintiff's "laundry list" of purported state action in this case.

In the Ninth Circuit case *Apao v. Bank of New York*, 324 F.3d 1091, 1094-95 (9th Cir. 2003), the court surveyed numerous cases, and noted that at least six federal circuits have addressed the issue of whether non-judicial foreclosure is state action, and all six found no state action:

> When the constitutionality of such [non-judicial foreclosure] statutes was challenged in a series of cases beginning in the 1970s, six circuits, including our own, found that the provisions did not violate the Fourteenth Amendment. They held there was no state action in either the availability of such private remedies or their enforcement. *See Mildfelt v. Circuit Court of Jackson Cnty.*, 827 F.2d 343, 346 (8th Cir.1987) . . . *Charmicor, Inc. v. Deaner*, 572 F.2d 694, 696 (9th Cir.1978) . . . *Levine v. Stein*, 560 F.2d

-10-

1175, 1176 (4th Cir.1977) . . . ***Northrip v. Fed. Nat'l Mortg. Ass'n***, 527 F.2d 23, 28-29 (6th Cir.1975) . . . ***Barrera v. Security Bldg. & Inv. Corp.***, 519 F.2d 1166, 1174 (5th Cir.1975) . . . and ***Bryant v. Jefferson Fed. Sav. & Loan Ass'n***, 509 F.2d 511, 513 (D.C. Cir.1974) . . . . Those decisions have not been seriously questioned in the intervening years.

The ***Apao*** Court went on to hold, consistent with the above cases, that there was insufficient state involvement to attribute the non-judicial foreclosure at issue to the state itself. . . .

In this case, Plaintiff cannot surmount the strong consensus of federal and state courts, including the Sixth Circuit and this District, that non-judicial foreclosures do not involve state action. None of the purported indicia of state "entanglement" Plaintiff points to amount to more than State recognition, regulation via "default" terms parties can adopt or change by contract, and enforcement of private power of sale provisions. To consider Tennessee's non-judicial foreclosure process "state action" because of this slight state involvement would be out of step with clear precedent, and would also effectively render the distinction between state and private action illusory. The Court finds no state action was involved in the non-judicial foreclosure of Plaintiff's property. Accordingly, the Court will dismiss Plaintiff's Constitutional claim, because she has not stated a federal cause of action pursuant to § 1983.

***Drake I*** at *2 -4 (footnote omitted; emphasis added).

We find the analysis in ***Drake I*** to be well-reasoned and persuasive. The same "laundry list" of statutory terms is at issue in the present case. We adopt the analysis of ***Drake I*** and hold that private non-judicial foreclosure by auction does not involve state action.

The court in ***Drake I*** did not address the state constitutional claims; therefore, it did not reach the question of whether state action is required for a prima facie violation of the Tennessee Constitution. We hold that state action is required before there can be a violation

of the Tennessee constitutional provisions at issue in this case because those provisions limit the actions of the government, but not private entities.

The "law of the land" clause found at Article 1, § 8 of the Tennessee Constitution provides the "same" protection as the due process clause of the federal constitution. *State v. White*, 362 S.W.3d 559, 566 (Tenn. 2012)("Although the terminology differs slightly, the phrases 'law of the land' and 'due process of law' have been construed to *mean the same thing*."). This has been the view of our Supreme Court for over 100 years. *See*, *id.*; *State v. James*, 315 S.W.3d 440, 448 n.4 (Tenn. 2010)("The phrase, 'the law of the land,' used in [article I, section 8] of our State Constitution, and the phrase, 'due process of law,' used in the Fifth Amendment and in the first section of the Fourteenth Amendment to the Constitution of the United States, are synonymous phrases *meaning one and the same thing*." (*quoting State v. Hale*, 840 S.W.2d 307, 312 (Tenn.1992)(emphasis added)); *Lynch v. City of Jellico*, 205 S.W.3d 384, 391 (Tenn. 2006)("*synonymous* with the due process provisions of the federal constitution") (emphasis added); *City of Knoxville v. Entertainment Resources, LLC*, 166 S.W.3d 650, 655 (Tenn. 2005)("[A]s we have often observed, the 'law of the land' proviso of our constitution is *synonymous* with the 'due process of law' provisions of the federal constitution." (*quoting State ex rel. Anglin v. Mitchell*, 596 S.W.2d 779, 786 (Tenn.1980)(emphasis added); *Daugherty v. State*, 393 S.W.2d 739, 743 (Tenn.1965)("Article 1, Section 8 of the Tennessee Constitution . . . is . . . of course, *synonymous* with the 'due process of law' used in the Fifth Amendment and in the First Section of the Fourteenth Amendment to the Constitution of the United States.")(emphasis added); *Knoxville & O.R. Co. v. Harris*, 43 S.W. 115, 120 (Tenn. 1897)("This double assailment may be treated as one objection, since 'due process of law' and the 'law of the land' are *synonymous* phrases, and that which is violative of the one is violative of the other also, and vice versa.")(emphasis added).

The "fundamental protection provided by each [clause] is protection from the government." *Bryant v. Tenet, Inc.*, 969 S.W.2d 923, 925 (Tenn. Ct. App. 1997). Thus, there can be no violation of Article 1, § 8 unless there is state action. *Id.*; *Ingle v. Head*, No. W2006-02690-COA-R3-CV, 2007 WL 4530825 at *7 (Tenn. Ct. App. W.S., filed Dec. 26, 2007)(complaint for violation of state constitutional rights arising out of seizure of an automobile failed to state a claim for lack of state action); *Burch v. McKoon, Billings & Gold, P.C.*, M2004-00-83-COA-R3-CV, 2005 WL 2104611 at *11 (Tenn. Ct. App. M.S., filed Aug. 31, 2005) (constitutional claims without merit for lack of state action).

We are also persuaded that neither the open courts clause nor the remedies clause contained in Article 1, § 17 limits private action. In *Deiters v. Home Depot, USA, Inc.*, 842 F. Supp. 1023 (M.D. Tenn. 1993), the issue before the court was whether Article I, § 17 "creates a clear and unambiguous public policy exception to the employment at-will

doctrine" that prevents an employer from firing an employee for filing a lawsuit against the employer. *Id*. at 1026. The court stated:

> As a general rule, constitutional restrictions limit actions by the government, as opposed to actions by private individuals. Indeed, courts have uniformly applied Article I, § 17 only to governmental action, not to private action.

*Id*. at 1027. After gathering and discussing analogous cases, the court held that "Article I, § 17 . . . limits only governmental actions; private entities are not so bound." *Id*. at 1029. "Courts in most other states have concluded . . . that constitutional 'open courts' provisions limit only the actions of government and the courts themselves, but do not limit the actions of private individuals . . ." *Jersey v. John Muir Medical Center*, 97 Cal. App. 4th 814, 118 Cal. Rptr. 2d 807, 816 (2002). Thus, we conclude that non-judicial foreclosure does not violate Article 1, § 17 because it does not involve state action.

We also note that for nearly 100 years, Article 1, § 17 has been viewed to impose limits on the judiciary, but not on the legislature. *Scott v. Nashville Bridge Co.*, 223 S.W. 844 (Tenn. 1920). In *Scott*, the issue was the constitutionality of the worker's compensation law as then configured. An injured employee argued that the exclusive remedy provision "close[d] the courts to him that were open prior to its passage." *Id*. at 852. The Court found no merit to the argument because "section 17 of article 1 of our state Constitution is a mandate to the judiciary, and was not intended as a limitation of the legislative branch of the government." *Id*. The Borrower argues that *Scott* was wrongly decided and has not been followed in more recent decisions. The Borrower is wrong. A similar argument was made and rejected in *Mize v. Conagra, Inc.*, 734 S.W.2d 334, 337 (Tenn. Ct. App. 1987) and in *Estate of Shultz v. Mumford, Inc.*, 650 S.W.2d 37, 39 (Tenn. Ct. App. 1982). *Scott* was cited favorably in *Harmon v. Angus R. Jessup Associates, Inc.*, 619 S.W.2d 522, 524 (Tenn. 1981) and *Harrison v. Schrader*, 569 S.W.2d 822, 827 (Tenn. 1978) for the proposition that the legislature does not unconstitutionally close the courts by enacting statutes of repose. Even if we saw some merit to the Borrower's argument, which we do not, we would not be free to disregard the High Court's holding in *Scott*. *See Shultz*, 650 S.W. 2d at 39 ("Since the issue before us has been passed on by the Supreme Court and since we are an intermediate appellate court, we are not at liberty to depart from precedent decisions."). Thus, we hold that the statutes authorizing and regulating private foreclosure sales do not violate Article 1, § 17 of the Tennessee Constitution.

Another constitutional issue that the *Drake* opinion did not address directly was whether the statute authorizing eviction for unlawful detainer violates the Borrower's

constitutional rights by forbidding inquiry into the merits of the purchaser's title. Tenn. Code Ann. § 29-18-119(c) (2012)("The estate, or merits of the title, shall not be inquired into . . ..").  This court considered the question of whether a person who holds over after foreclosure under a deed of trust may assert wrongful foreclosure as an affirmative defense in *Citifinancial Mortgage Co., Inc. v. Beasley*, No. W2006-00386-COA-R3-CV, 2007 WL 77289 at *5 (Tenn. Ct. App. W.S., filed Jan. 11, 2007).  We held that "in the unique case of foreclosures conducted under a power of sale, however, the landlord/tenant relationship [necessary to maintain an unlawful detainer action] may not arise when the trustee has exercised the power of sale in violation of the deed of trust." *Id*. at *7.  Therefore, we held that wrongful foreclosure is a defense to an unlawful detainer brought by a purchaser in foreclosure. *Id.*; *see Davis v. Williams*, E2010-01139-COA-R3-CV, 2011 WL 335069 at *3 (Tenn. Ct. App. E.S., filed Jan. 31, 2011). In *Davis,* we stated,

> [t]here is absolutely no doubt that wrongful foreclosure can be raised as an affirmative defense to an unlawful detainer action brought by the purchaser of property in foreclosure. *Beas[le]y*, 2007 WL 77289 at *6-7; *Federal Nat'l Mortgage Ass'n v. Robilio*, No. W2007-01758-COA-R3-CV, 2008 WL 2502114 at *5 (Tenn. Ct. App. W.S., filed June 24, 2008). "Where title bears directly upon the right of possession . . . a party may legitimately interpose the issue." *Beas[le]y*, 2007 WL 77289 at *6. It is the purchaser's "constructive entry" onto the premises through the title obtained in foreclosure that "provides the basis for maintaining the unlawful detainer action." *Id.* at *7.

2011 WL 335069 at *3.  Since the Borrower was free to assert wrongful foreclosure as a defense to the unlawful detainer action, and raise her constitutional issues in circuit court, we hold that the trial court correctly determined the Borrower's counterclaim does not state a prima facie constitutional violation.

The Borrower argues that the power of sale provisions in the deed of trust are in violation of the public policy that she be afforded reasonable notice and a meaningful opportunity to be heard.  She argues that power of sale provisions are unconscionable and should be denied enforcement for the same reason exculpatory negligence clauses are not enforced in some contexts.  *See*, *e.g.*, *Olson v. Molzen*, 558 S.W.2d 429, 432 (Tenn. 1977)(doctor cannot escape negligence through such a clause); *Crawford v. Buckner*, 839 S.W.2d 754, 760 (Tenn. 1992)(exculpatory clause in a residential lease); *Carey v. Merritt*, 148 S.W.3d 912, 918 (Tenn. Ct. App. 2004)(home inspector's exculpatory clause).  The Borrower's public policy argument fails because once the legislature acts, this court is not free to substitute its public policy judgment for that of the legislature. *Griffin v. Shelter Mut.*

***Ins. Co.***, 18 S.W.3d 195, 200-01 (Tenn. 2000). The legislature has determined that the public policy of the state is to allow foreclosure through non-judicial sale in the very statutes the Borrower attacks in her counterclaim.[1] We hold that there is no merit in the Borrower's assertions that the foreclosure process violates public policy. Therefore, for all the reasons we have articulated, the trial court correctly held that the counterclaim failed to state a claim. This is true whether the statutory attack is treated as a "facial" attack on the statutes, or an "as applied" attack.

We turn now to the Borrower's argument that the trial court improperly granted summary judgment to CitiMortgage. The Borrower's first argument in this regard is that the affidavit submitted in support of summary judgment is from an affiant who cannot have the personal knowledge necessary to lay the foundation that all the records submitted are business records. She argues that the records are not the records of the affiant's employer, but of "five unrelated entities or individuals."

The Borrower argues that "[t]here was no proof that notice of acceleration of the note was given as required by Section 22 of the deed of trust." The part of section 22 that pertains to acceleration states as follows:

> Lender shall give notice to Borrower prior to acceleration
> following Borrower's breach of any covenant or agreement in
> this Security Instrument . . . . The notice shall specify: (a) the
> default; (b) the action required to cure the default; (c) a date, not
> less than 30 days from the date the notice is given to Borrower,
> by which the default must be cured; and (d) that failure to cure
> the default on or before the date specified in the notice may
> result in acceleration of the sums secured by this Security
> Instrument and sale of the Property. The notice shall further
> inform Borrower of the right to reinstate after acceleration and
> the right to bring a court action to assert the non-existence of a
> default or any other defense of Borrower to acceleration and

---

[1] Because the legislature allows the parties to contract for private foreclosure, but does not compel it, there is no inconsistency in holding that the public policy as established by the legislature is to "allow" private foreclosure and, on the other hand, holding that there is no state action involved in a private foreclosure. *See **Drake I*** at *2. An example may be helpful. The legislature has determined that, subject to some restrictions, a "client" may receive a "tattoo" and a "tattoo artist" or "operator" may provide a tattoo to the client. *See* Tenn. Code Ann. §§ 62-38-201 - 211 (2009). They are free to form that agreement, subject to the restrictions related to health, and age, and licensure. ***Id***. It cannot be against public policy to run a "tattoo parlor" because the legislature has established that is permissible. No state action is involved because the legislature has not compelled anyone to have a tattoo.

sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. . . .

Among the documents CitiMortgage submitted in support of summary judgment was the affidavit of Shellie Wallace, an attorney who was appointed successor trustee under the deed of trust and who supervised the foreclosure at issue. She states in her affidavit that

> [o]n July 7, 2010, [I] mailed a letter to [the Borrower] notifying her that she was in default under the terms of the Note and Deed of Trust and the debt had been accelerated. A true and correct copy of the letter is attached . . . . The signature at the bottom of the letter is my signature.

The letter contains the following statements:

> . . . . You are currently in default under the terms of your note and deed of trust/mortgage in that you have failed to make the payments due through the date of this letter. The debt has been accelerated. The amount of the debt that we are attempting to collect and the total amount currently due on your loan as of the date of this letter is $120,682.44. . . .
>
> We are required by your security instrument to advise you that you have a right to reinstate the loan after acceleration and a right to assert in any foreclosure proceeding that no default exists, or any other defense you may have to acceleration and foreclosure. . . .

The file also contains the "supplemental" affidavit of Cindy Swan stating that, based on her personal knowledge, the documents submitted in support of summary judgment are all from the business records of CitiMortgage, Inc., "maintained in the usual course and regular practice of business by CitiMortgage." Several of those documents are letters from CitiMortgage to the Borrower advising her of her default and stating the amount owed and the date by which cure must be made. The affidavit further states that "[i]t is CitiMortgage's regular custom and practice to mail those letters to the address listed by regular first class mail, and to place a copy of the letter in the debtor's file."

We hold that the affidavit of Ms. Wallace and attached documents are admissible proof that the Borrower received notice of her default. We further hold that Ms. Swan's supplemental affidavit provides sufficient foundation to admit the letters from CitiMortgage to the Borrower as business records. CitiMortgage shifted the burden to the Borrower to come forward with evidence that she did not receive the notices of default. *See **Hannan v. Alltel***, 270 S.W.3d 1, 9, n.6 (Tenn. 2008). Since the Borrower did not submit an affidavit stating that she did not receive the notices, there was no genuine issue left for trial on that material fact.

The Borrower argues that because no affidavit from a representative of a newspaper was submitted in support of the motion for summary judgment, it cannot be determined from the record whether the sale was advertised three times in a local newspaper as required by Tenn. Code Ann. § 35-5-101 (Supp. 2012). One of the documents submitted in support of summary judgment is a certified copy of the trustee's deed as recorded with the Hamilton County Register of Deeds. The trustee's deed states that "advertisement and notice of the sale was made and given [in] conformity with the terms and provisions of [the] Deed of Trust," and that "advertisement began on July 30, 2010 and was advertised a total of three times, prior to actual sale date." By statute, the recitations in the deed of trust provide prima facie evidence that the sale was properly advertised in the newspaper. Tenn. Code Ann. § 24-5-101 (2000)(statements in a conveyance are "prima facie evidence of the facts in such instruments recited"). Thus, again, CitiMortgage shifted the burden to the Borrower to come forward with evidence that the sale was not properly advertised. Since she did not, CitiMortgage was entitled to summary judgment granting it possession of the Property.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant, Angeline Renee Drake. This case is remanded, pursuant to applicable law, for enforcement of the trial court's judgment and for collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., PRESIDING JUDGE

-17-