IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 1, 2025

**BRADY DANIELS ET AL. v. VINCE TROTTER**

**Appeal from the Chancery Court for Hamilton County**
No. 19-0040     Jeffrey M. Atherton, Chancellor

———————————————

**No. E2024-00473-COA-R3-CV**

———————————————

In this constitutional challenge involving a non-judicial foreclosure, the trial court determined that Tennessee Code Annotated § 35-5-106 is not unconstitutional as applied because the City of Chattanooga acted in a proprietary capacity when it conducted a non-judicial foreclosure of a deed of trust. Thus, only private conduct is at issue and constitutional rights are not implicated. We affirm.

 **Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which ANDY D. BENNETT and CARMA DENNIS MCGEE, JJ., joined.

Sharon McMullan Milling, Hixson, Tennessee, for the appellants, Brady L. Daniels and Sylvia L. Benford Daniels.

Jonathan Skrmetti, Attorney General and Reporter; J. Matthew Rice, Solicitor General; and Jing Geng, Assistant Attorney General, for the intervenor-appellee, State of Tennessee.

Barry L. Abbott, Chattanooga, Tennessee, for the appellee, Vince Trotter.

Harry R. Cash, Chattanooga, Tennessee, for the appellees, City of Chattanooga and Chattanooga Neighborhood Enterprise, Inc.

# OPINION

## BACKGROUND

This is the parties' second appeal of this matter. As background, we quote at length from our first opinion:

Since 1971, Sylvia L. Benford Daniels and Marian L. Benford had been the joint owners of a piece of property located in Chattanooga, Tennessee ("the Property"). In 1996, Marian Benford, Sylvia L. Benford Daniels, and Brady Daniels executed a deed of trust, and Ms. Benford made all mortgage payments until her death in 2010. As part of the loan process, the loan application and the "Loan Master Information" listed the address of Sylvia L. Benford Daniels and Brady Daniels (collectively, "the Daniels") as being in Columbia, Maryland. The record also includes a document entitled, "Chattanooga Home Improvement Program Deed of Trust and Security Agreement," which states that the instrument is a "Construction Mortgage." The lender and beneficiary of the deed of trust is listed as "the CITY OF CHATTANOOGA, organized and existing under the Laws of the State of Tennessee." The deed of trust reflects that the document was prepared by and filed for the City of Chattanooga c/o Chattanooga Neighborhood Enterprise, Inc.[1]

Following Ms. Benford's death, Sylvia Benford Daniels became the sole owner of the property due to the right of survivorship clause in the original deed. The Daniels were both co-debtors to the mortgage on the Property. At all times relevant, the Daniels continued to reside at their address in Columbia, Maryland as listed in the loan application document. A relative of Ms. Daniels was residing at the Property and had agreed to pay the mortgage payments. At some point, the family member ceased making the mortgage payments, and the City of Chattanooga, as "beneficiary under the Deed of Trust and the true and lawful owner and holder of the [promissory note]," appointed a successor trustee to conduct the foreclosure process. The Daniels did not receive notice at their Maryland address of non-payment of the mortgage or of the upcoming foreclosure sale. Instead, the foreclosure notices addressed to the Daniels were sent to the Property address in Chattanooga, Tennessee. The record reflects that the family member residing at the Property at the time of the foreclosure was also copied on the notice of foreclosure. The public auction for the Property was advertised in the

---

[1] CNE's mission is "to drive homeownership, promote financial well-being, build community connections, restore and build stable housing and more." CHATTANOOGA NEIGHBORHOOD ENTER., *What We Do*, https://www.cneinc.org/what-we-do (last visited June 16, 2025).

Chattanooga Times Free Press, and the Property was purchased at the foreclosure sale by the respondent, Vince Trotter. Title was transferred to Mr. Trotter by successor trustee's deed in November 2018. The Daniels did not learn of the foreclosure until after title of the Property had been transferred to Mr. Trotter.

In January 2019, the Daniels filed a petition to set aside the successor trustee's deed and to declare Sylvia Daniels the owner of the real property, alleging that they did not receive notice of the foreclosure sale by the City of Chattanooga and Chattanooga Neighborhood Enterprise, Inc. Alternatively, the Daniels requested a judgment for fair market value of the Property, as well as pre-judgment interest and post-judgment interest. The Daniels filed their action in the Hamilton County Chancery Court (the "Trial Court"). In their petition, the Daniels also named Vince Trotter as a respondent and alleged that he was not a bona fide purchaser for value and had not purchased the property in good faith.

*　　　*　　　*

In October 2019, the Daniels filed a motion to amend their petition to include the allegation that Tenn. Code Ann. § 35-5-101, *et seq.*, as applied in the present case violates the Daniels' constitutional rights. The Trial Court subsequently granted the motion to amend upon agreement of the parties, and the Daniels filed their amended petition alleging the unconstitutionality of Tenn. Code Ann. § 35-5-106.

Mr. Trotter filed a motion for summary judgment, requesting that all claims against him be dismissed. In his memorandum of law, Mr. Trotter argued that the Daniels had not alleged fraud, had not sought monetary damages from Mr. Trotter, and the foreclosure sale was not void or voidable pursuant to Tennessee law. According to Mr. Trotter, the motion for summary judgment "seeks a dismissal of the Daniels' efforts to set aside the sale only." Mr. Trotter cited to Tenn. Code Ann. § 35-5-106 and argued that the "mere failure to identify or provide notice to an interested party does not provide sufficient grounds to set aside a foreclosure sale."

The Daniels responded to Mr. Trotter's motion and opposed the dismissal, arguing that the foreclosure of the Property was a governmental "taking" without due process of law, that Tenn. Code Ann. § 35-5-106 is unconstitutional as applied to the taking of property by the government, and that the City of Chattanooga and Chattanooga Neighborhood Enterprise, Inc. failed to comply with the notice provisions of Tenn. Code Ann. § 35-5-101(e) by sending notice to the Daniels' last known address. According to the

- 3 -

Daniels, this foreclosure by the City of Chattanooga was "a state action rather than an action by a private entity" and was, therefore, a governmental taking. The Daniels argued that because this is a governmental taking, Tenn. Code Ann. § 35-5-106 is unconstitutional in this case.

\* \* \*

The Trial Court entered an order in July 2020, granting Mr. Trotter's motion for summary judgment upon its determination that the foreclosure sale was not void or voidable pursuant to Tenn. Code Ann. § 35-5-106 and that the chancery court did not have jurisdiction to set aside the foreclosure sale. Regarding the Daniels' constitutional claims, the Trial Court distinguished the Daniels' reliance on a Court of Appeals opinion in *Owens v. Hamilton C[n]ty.*, No. E2017-02395-COA-R3-CV, 2018 WL 6253818, at \*5 (Tenn. Ct. App. Nov. 28, 2018), because *Owens* involved the collection of municipal taxes and lack of service of process. The Trial Court explained that "[t]he collection of municipal taxes is a governmental function and differs from a governmental entity pursuing a private remedy for a breach o[f] contract." Therefore, the Trial Court found that Tennessee statutory law related to non-judicial foreclosures provides adequate due process protections and a "constitutionally adequate remedy for a violation – a claim for monetary damages."

*Daniels v. Trotter*, No. E2020-01452-COA-R3-CV, 2022 WL 2826848, at \*1–2 (Tenn. Ct. App. July 20, 2022) ("*Trotter I*"). In *Trotter I*, we concluded that the case must be remanded for further proceedings to give our Attorney General opportunity to intervene and defend the constitutionality of § 35-5-106. *See id.* at \*6 ("[U]pon our review of the record on appeal, we see no evidence that the Tennessee Attorney General's Office was notified during the trial court proceedings of the Daniels' claim that Tenn. Code Ann. § 35-5-106 is unconstitutional as applied to mortgagees that are governmental entities."). Accordingly, we vacated the trial court's order and remanded the case with instructions that the trial court "consider whether state action is involved in a non-judicial foreclosure where a governmental entity is the mortgagee and, if yes, whether Tenn. Code Ann. § 35-5-106 is unconstitutional as applied when the government is the mortgagee." *Id.* at \*7.

On remand, the State of Tennessee intervened in the proceedings. On September 13, 2023, Mr. Trotter filed a motion asking the trial court to reconsider his motion for summary judgment, pending a filing by the State defending § 35-5-106. On November 22, 2023, the State filed a memorandum in support of the statute, maintaining that it does not violate due process under these circumstances because there is no state action. The State argued that the City acted in a proprietary, as opposed to a governmental, capacity when it

- 4 -

foreclosed the Property; thus, it acted like a private entity, and the Daniels' ("Plaintiffs'") due process rights were not implicated.

The trial court entered an order granting Mr. Trotter's renewed motion for summary judgment on March 1, 2024. In pertinent part, the trial court's order provides:

> In the present case, [Chattanooga Neighborhood Enterprise, Inc. ("CNE")], as the loan servicing agent for the City of Chattanooga, was acting in a private, proprietary capacity when it foreclosed on the subject real property. The City acted in the role of a lender/creditor/mortgagee in 1996 both when it made the home-improvement loan to Sylvia Daniels and Marian Benford, and when it received a mortgage on the real property as collateral for the loan. The actions of CNE and the City in this case are no different from those of any private entity acting as a lender under a deed of trust, and the weight of authority from other jurisdictions supports this conclusion. *See Seattle Mortgage Co., Inc. v. Unknown Heirs of Gray*, 136 P.3d 776, 782, 786 (Wash. Ct. App. 2006); *Cannon v. Forest Pres. Dist. of Cook Cnty., Illinois*, No. 14 C 5611, 2016 WL 2620515 at *5 (N.D. Ill. May 9, 2016), *aff'd sub nom.*; *Squires-Cannon v. Forest Pres. Dist. of Cook Cnty.*, 897 F.3d 797 (7th Cir. 2018); *AgriBank FCB v. Cross Timbers Ranch, Inc.*, 919 S.W.2d 263, 268 (Mo. Ct. App. 1996).
>
> *          *          *
>
> Because the actions of CNE and the City were proprietary in nature, the foreclosure sale did not constitute state action, and Plaintiffs' due-process rights are not implicated. This ruling is in accord with *CitiMortgage, Inc. v. Drake*, 410 S.W.3d 797 (Tenn. Ct. App. 2013), wherein the Tennessee Court of Appeals held that due-process principles are not implicated in nonjudicial foreclosures conducted pursuant to Tennessee law between private parties, because they do not involve "state action." 410 S.W.3d at 805-06.

From this order, Plaintiffs once again appeal.

## ISSUES

The sole issue on appeal is whether the trial court erred in concluding that § 35-5-106, as applied, does not violate Plaintiffs' right to due process.

## STANDARD OF REVIEW

The trial court resolved this case by granting summary judgment to Mr. Trotter. Accordingly, our standard of review is de novo with no presumption of correctness.

- 5 -

*Kershaw v. Levy*, 583 S.W.3d 544, 547 (Tenn. 2019).  Further, this case centers on the constitutionality of a Tennessee statute, an issue which we also review de novo with no presumption of correctness.  *CitiMortgage, Inc. v. Drake*, 410 S.W.3d 797, 803 (Tenn. Ct. App. 2013).

> In addressing this issue, we must be mindful that "[s]tatutes enacted by the legislature are presumed constitutional. Thus, we must 'indulge every presumption and resolve every doubt in favor of constitutionality.'" *City of Oakland v. McCraw*, 126 S.W.3d 29, 38 (Tenn. Ct. App. 2003) (citing *Vogel v. Wells Fargo Guard Servs.*, 937 S.W.2d 856, 858 (Tenn. 1996)). *Randstad North America, L.P. v. Tennessee Dept. of Labor and Workforce Development*, 372 S.W.3d 98, 101 (Tenn. Ct. App. 2011).

*Id.*

### DISCUSSION

Centrally at issue in this appeal is the statutory scheme governing non-judicial foreclosures.  *See Trotter I*, 2022 WL 2826848, at *4 ("Tennessee statutory law regulates non-judicial foreclosures.").  Section 35-5-101(e) explains how such sales should be advertised, requiring that

> [i]n any sale of land to foreclose a deed of trust, mortgage, or other lien securing the payment of money or other thing of value or under judicial orders of process, the trustee or other party that sells the property shall send to the debtor and any co-debtor a copy of the notice required in § 35-5-104.

However, "[s]hould the officer, or other person making the sale, proceed to sell without pursuing the provisions of this chapter, the sale shall not, on that account, be either void or voidable."  Tenn. Code Ann. § 35-5-106.  As we explained in *Trotter I*, "in enacting this statute, the General Assembly intended to eliminate the uncertainty with land titles resulting from foreclosure sales."  2022 WL 2826848, at *5 (citing *McSwain v. Am. Gen. Fin., Inc.*, No. 02A01-9309-CH-00215, 1994 WL 398819, at *2 (Tenn. Ct. App. July 22, 1994)).  We also pointed out that the remedy for wrongful foreclosure is not to void the land sale, but rather criminal and civil liability, *see id.*, for "all damages resulting from the failure."  Tenn. Code Ann. § 35-5-107.

In this case, Plaintiffs contend that § 35-5-106 amounts to a government taking because the mortgagee is the City of Chattanooga, which is undisputedly a government entity.  Because Plaintiffs did not receive sufficient notice of the sale,[2] they contend that

---

[2] "According to the Trial Court's order, Mr. Trotter conceded for purposes of the summary judgment motion that the City of Chattanooga and Chattanooga Neighborhood Enterprise, Inc. did not send

- 6 -

the City violated Plaintiffs' right to due process. The State contends, however, that due process is not implicated because the City acted in its proprietary role as mortgagee as opposed to acting in a governmental role. And because due process applies to state action but not private conduct, the State urges that no violation occurred here. This dispute therefore turns on whether the City engaged in governmental or proprietary conduct when acting as Plaintiffs' mortgagee and the extent to which a municipality is constitutionally restrained when acting in a proprietary capacity.

"Municipalities are endowed with proprietary and governmental powers." *BellSouth Telecomms., Inc. v. City of Memphis*, 160 S.W.3d 901, 912 (Tenn. Ct. App. 2004) (citing *Memphis Power & Light Co. v. City of Memphis*, 112 S.W.2d 817, 820 (Tenn. 1937)). In its governmental capacity, "considered as an agency of the state, the [municipal] corporation exercises functions and powers, possesses rights, and has imposed upon it duties variously designated as public, legislative, political, or governmental, and acting in this capacity a municipality acts as a sovereignty." *Id.* In its proprietary capacity, however, the municipality is "not considered as an agency of the state," and "has imposed upon it duties variously designated as private, quasi-private, proprietary, business, commercial, ministerial, or merely municipal[.]" *Id.* When operating in its proprietary capacity, "the municipality acts as a private or quasi-private corporation, enjoying powers and privileges conferred for its own benefit." *Id.* The distinction is important in the constitutional context because the government is constrained by the Constitution in ways in which private entities are not. *See City of Cookeville ex rel. Cookeville Reg'l Med. Ctr. v. Humphrey*, 126 S.W.3d 897, 906 (Tenn. 2004) ("It is well established that the due process protections of the Fourteenth Amendment do not come into play unless there is some action on the part of the State." (citing *Shelley v. Kraemer*, 334 U.S. 1, 13 (U.S. 1948))); *see also CitiMortgage*, 410 S.W.3d at 806.

However, distinguishing between the types of activities is no simple task. As two commentators put it,

> [t]he governmental-proprietary distinction has led a stormy life. Courts have characterized it as "illusory," a "quagmire," a "rule of law that is inherently unsound," and as a "talismanic formula" that results in "unenlightening characterizations of States' activities." Commentators have branded the distinction as "probably one of the most unsatisfactory known to the law," have questioned its internal coherence, and have dismissed it as irrelevant in constitutional decisions. The distinction, however, clings stubbornly to life, appearing in a remarkably wide range of cases.

---

proper notice to the Daniels of the foreclosure action, as required by Tenn. Code Ann. § 35-5-101." *Trotter I*, 2022 WL 2826848, at *2.

Michael L. Wells & Walter Hellerstein, *The Governmental-Proprietary Distinction in Constitutional Law*, 66 VA. L. REV. 1073 (1980) (footnotes omitted).[3]  Likewise, Tennessee law provides no firm test to aid in our analysis, and this Court has held that "[t]o define specifically the terms 'governmental capacity' and 'proprietary capacity' is impossible." *Williams v. Town of Morristown*, 222 S.W.2d 607, 610 (Tenn. Ct. App. 1949), *decree modified*, 222 S.W.2d 615 (Tenn. 1949).  Instead, we look to the specific facts of each case, as well as "[t]he purpose and character of the undertaking, and the method of its operation, [to] determine whether [the action] is public or private." *Id.*

A review of Tennessee cases addressing governmental versus proprietary action reveals a highly varied body of law.  For example, "[i]t is the settled common law of this state that the operation of an electrical power system or a water works system is a corporate or private function of a municipality, and not a public or governmental function." *Id.*; *see also Bybees Branch Water Ass'n v. Town of McMinnville*, 333 S.W.2d 815, 816 (Tenn. 1960) ("A municipal corporation engaged in the business of supplying public utilities and facilities is regarded as a public corporation transacting private business for hire, and, in that respect and to that extent, as a private or quasiprivate corporation.").  Further, "[w]here control of the streets . . . is properly delegated and vested in a municipality, '[t]he general rule is that a city or town holds its streets in a proprietary and not a governmental capacity, and its duty to construct and maintain them is a corporate duty . . .'" *BellSouth*, 160 S.W.3d at 912 (quoting *City of Nashville v. Brown*, 157 S.W.2d 612, 615 (Tenn. 1941)).

On the other hand, a variety of actions have been deemed governmental:

Examples are Johnson v. City of Jackson, supra (maintenance of parking meters held to be a governmental function); Vaughn v. City of Alcoa, 194 Tenn. 449, 251 S.W.2d 304 (1951) (maintenance of city swimming pool for which fees were charged, and which was highly advertised, held to be public, not private); Town of Pulaski v. Ballentine, 152 Tenn. 393, 284 S.W. 370 (1925) (operation of public cemet[e]ry held to be governmental function, even though the individuals paid fixed prices for lots). See, generally, 57 Am.Jur.2d, Municipal Corporations, Section 34, page 48.

*City of Memphis v. Bettis*, 512 S.W.2d 270, 273 (Tenn. 1974) (concluding that city-sponsored ambulance program was governmental, notwithstanding the fact that a fee was charged, where the program "was one which the government took upon itself to meet the urgent needs of the general public").

---

[3] Yet another commentator has called the governmental-proprietary distinction "murky, inconsistent between jurisdictions, inconsistent within jurisdictions, and of limited use in predicting how courts will rule."  Hugh D. Spitzer, *Realigning the Governmental/Proprietary Distinction in Municipal Law*, 40 SEATTLE U. L. REV. 173, 174 (2016).

Viewing these cases in toto calls to mind the "quagmire" mentioned by Wells and Hellerstein, *supra*, and our research reveals no Tennessee cases closely analogous to a city acting as mortgagee to its citizens and then conducting a non-judicial foreclosure.[4] As we noted in *Trotter I*, "it is an open question in Tennessee whether a non-judicial foreclosure by a governmental entity may be subject to due process protections afforded by the Fourteenth Amendment of the United States Constitution and Article I, Section 8 of the Tennessee Constitution." 2022 WL 2826848, at *6. We also noted in *Trotter I* that different jurisdictions have ruled differently under similar circumstances. *See id.* (collecting cases).

Against this backdrop, we return to the question before us, whether the City acted in a proprietary capacity in acting as Plaintiffs' mortgagee and foreclosing its deed of trust on the Property. On one hand, providing home improvement loans to help boost homeownership in the community could be fairly viewed as a program the City "took upon itself to meet the urgent needs of the general public," *Bettis*, 512 S.W.2d at 274, and/or as a function meant to better society generally. One could argue that boosting homeownership and home improvement in the community promotes general welfare. Nor is it uncommon for the government to play a role in assisting citizens with homeownership, for example, through federally backed mortgages. All of these factors suggest governmental action in the present case. On the other hand, nothing in the record suggests that the City is somehow required to perform this function; nor is there a scarcity of mortgage lenders in the private market. *See Crowe v. John W. Harton Mem'l Hosp.*, 579 S.W.2d 888, 892 (Tenn. Ct. App. 1979) ("A 'traditional governmental function' is one which is able to be adequately performed only by government, is traditionally expected to be performed by government, or is required to be performed by the command of the Legislature or the constitution."). Further, while it could be argued that home improvement loans promote general welfare, that logic is tenuous. The program at issue here appears to benefit only those individuals who apply for it as opposed to the community at large. *See Bettis*, 512 S.W.2d at 274 (noting that ambulance program was "a task undertaken not for the convenience of a few . . .").

---

[4] Another issue that arises when reviewing Tennessee cases on the governmental-proprietary distinction in the constitutional context is that many of the cases center on making the distinction for purposes of governmental immunity in the tort law context. *See, e.g.*, *Williams*, 222 S.W.2d at 609 (tort action stemming from drowning in reservoir that was part of town's water system); *Bettis*, 512 S.W.2d at 271 (action arose from accident in which passengers were injured while riding in municipal ambulance). These types of cases are categorically different from cases like the one now before us, which deals with how state action might be constitutionally restrained based on how an activity is categorized. *See* Wells & Hellerstein, *supra*, at 1078 (discussing the resulting confusion when courts fail to consider this difference, and positing that "the content of the terms governmental and proprietary must be fashioned to fit the purposes for which they are employed in particular contexts"). We cite cases such as *Williams* and *Bettis*, not to cause confusion or because we do not acknowledge the important differences, but simply because there is a dearth of Tennessee case law on the narrow issue at hand, and these cases provide, at the very least, a helpful framework.

Looking at the specific facts of this case, as well as "[t]he purpose and character of the undertaking, and the method of its operation," *Williams*, 222 S.W.2d at 610, we conclude that the City acted in a proprietary capacity when it foreclosed the deed of trust on the Property. As the trial court noted, "[t]he actions of CNE and the City in this case are no different from those of any private entity acting as a lender under a deed of trust[.]" Rather than a traditional government function that is exclusively performed by the government, mortgage lending is commonly performed in the private market and is, broadly, a commercial practice meant to generate revenue. In that vein, nothing in the record suggests that the City's lending program is some sort of "governmental enterprise" run with "public funds for the common good." *Williams*, 222 S.W.2d at 612.

Inasmuch as the City acted in a private capacity in a commercial undertaking, the same rules that would apply to a private business or corporation apply here. *See BellSouth Telecomms.*, 160 S.W.3d at 912 (noting that when a municipality acts in a proprietary capacity, it is "not considered as an agency of the state" (citing *Memphis Power & Light Co.*, 112 S.W.2d at 820)). And because due process constraints do not apply to private conduct and are not implicated in non-judicial foreclosures between private parties, *CitiMortgage*, 410 S.W.3d at 806, Plaintiffs' right to due process has not been infringed upon. Thus, we affirm the trial court's decision that Tennessee Code Annotated § 35-5-106 is not unconstitutional as applied.

## CONCLUSION

The ruling of the Chancery Court for Hamilton County is affirmed, and this case is remanded for further proceedings consistent with this opinion. Costs on appeal are assessed to the appellants, Brady L. Daniels and Sylvia L. Benford Daniels, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE
