# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May 12, 2014 Session

## CAPITAL BANK v. OSCAR BROCK ET AL.

**Appeal from the Chancery Court for Hamilton County**
**No. 12-0422      Jeffrey M. Atherton, Chancellor**

---

**No. E2013-01140-COA-R3-CV - Filed June 30, 2014**

---

Capital Bank filed a complaint seeking a deficiency judgment against Oscar Brock and Frank E. Cowden, III ("Defendants") after they defaulted on a loan and following the sale at foreclosure of the property securing the debt.  After settlement discussions were unsuccessful, Capital Bank moved for summary judgment.  It asserted that no genuine issue of material fact exists and that it is entitled to a judgment as a matter of law.  Defendants contested the motion but only as to the amount of the deficiency and the issue of whether Capital Bank is entitled to an award of attorney's fees.  As a defense to the deficiency claim, Defendants stated that the property was sold at foreclosure for an amount "materially less" than its fair market value and that Capital Bank's knowledge of the alleged less-than-market-value sales price amounted to fraud, collusion or misconduct.  The trial court granted Capital Bank's motion.  It was awarded a judgment of $168,798.98 which amount includes $70,628.85 in attorney's fees.[1]  Defendants appeal. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II, JJ., joined.

William A. Harris, III, Chattanooga, Tennessee, for the appellants, Oscar Brock and Frank E. Cowden, III.

Wade K. Cannon and Justin B. Faith, Chattanooga, Tennessee, for the appellee, Capital Bank.

---

[1]While Defendants raised an issue in their brief as to the award of attorney's fees, they waived that issue at oral argument.

# OPINION

## I.

The material facts are not in dispute. On July 11, 2008, Defendants executed a promissory note in favor of Capital Bank for $475,000. Capital Bank is a Georgia banking corporation. The proceeds of the loan were to be used to finance the purchase of a 1.3 acre tract of undeveloped land ("the Property") at the northeast corner of Highway 153 and Stoneridge Drive in Hixson. The note by its terms was to mature in one year and was secured by a deed of trust on the Property.

In September 2009, the note and the deed of trust were renewed and the maturity date of the obligation was extended. There was a subsequent modification requiring payments in installments on the then-existing principal balance of $459,643.53 and accrued interest with a balloon payment due on November 1, 2013. Defendants defaulted when they failed to make the January 2012 installment.

In February 2012, Capital Bank notified Defendants of their default status and also advised them that failure to cure the default would result, in the following month, in acceleration of the debt. Further notices were sent by Capital Bank in March 2012 and April 2012 notifying Defendants of their continuing default, acceleration of the debt, the bank's intent to enforce the attorney fee provision, and its intent to foreclose. On April 20, 2012, Capital Bank provided notice to the Defendants that the substitute trustee intended to sell the Property at foreclosure. Notice of foreclosure was properly published in a newspaper. On May 16, 2012, Capital Bank bid-in the Property at foreclosure for $400,000.

On June 1, 2012, Capital Bank filed a complaint seeking a deficiency judgment against Defendants in the amount of $158,977.02, plus interest and attorney's fees.[2] Further pleadings, continuances, and an attempt at resolving the dispute followed. After negotiations proved unsuccessful, the trial court ordered Defendants to respond to the complaint. In their November 13, 2012 answer, Defendants admitted the allegations of the complaint except with respect to the amount of the deficiency.

---

[2]As of the date of foreclosure, the principal amount of the debt was $459,643.53. In addition, there was accrued interest of $11,215.47, late charges of $2,328.68, and fifteen percent (15%) in contractual attorney's fees amounting to $70,628.85. Further expenses included real property reports of $250, publication costs of $1,620, county real property taxes of $12,790.49, and appraisal fees of $500, for a total due of $558,977.02. After crediting the purchase price at foreclosure, a deficiency of $158,977.02 remained.

On December 12, 2012, Capital Bank filed a motion for summary judgment together with a statement of undisputed material facts and supporting affidavits. In their January 25, 2013 response, Defendants generally asserted that the "dispute between the parties extends only to the damages to which [Capital Bank] claims it is entitled."

Following a February 4, 2013 hearing, the trial court held that "there are only two unresolved issues as to [Capital Bank's] Motion for Summary Judgment, those being the value of the Property as of the date of foreclosure and the attorney's fees of [Capital Bank]. . . ." The court ordered Defendants to file "any supplemental affidavits or information . . . as to the issue of the value of the Property. . . ." In response, Defendant Cowden submitted an affidavit in which he stated that he had obtained an appraisal valuing the Property at $475,000 as of the foreclosure date. A copy of the appraisal was attached.

On February 25, 2013, the trial court heard argument on the pending motion.[3] On March 11, 2013, by agreed order, Capital Bank amended its complaint to seek a judgment in the increased, total amount of $170,876.74, which figure includes additional delinquent real estate taxes and related penalties and interest paid by Capital Bank to the City of Chattanooga shortly after foreclosure.[4] In its March 25, 2013, answer to the amended complaint, Defendants again admitted the allegations except as to the amount of the deficiency. Additionally, Defendants newly raised an affirmative defense, *i.e.*, that Capital Bank "sold the Property . . . at foreclosure for an amount which it knew was less than its market value which constitutes fraud, collusion, misconduct and/or irregularity in the sale process." Similarly, Defendants refuted, as an undisputed fact, that the $400,000 appraisal obtained by Capital Bank or its purchase bid for that amount reflects the true value of the Property or that Capital Bank believed this to be the case.

On April 8, 2013, the trial court held a hearing on the summary judgment motion and the issues raised in Defendants' March 25 responsive pleading. After taking the matter under advisement, the court filed its April 11, 2013, memorandum opinion and order wherein it found that Capital Bank was entitled to summary judgment. The court held that Capital Bank was entitled to a deficiency judgment of $168,798.98 plus interest accruing at a daily rate of $25.90. The deficiency judgment included $70,628.85 in attorney's fees, calculated as 15%

---

[3]The record on appeal consists solely of the technical record; no transcripts of evidence are before us.

[4]Capital Bank subsequently agreed to waive a portion of its claim for city taxes and related costs, thereby reducing the total deficiency claim to $168,798.98.

of the principal owing at default, plus accrued interest ($11,215.47). Defendants filed a timely notice of appeal.

II.

Following Defendants' waiver of the attorney's fee issue, one issue remained. As taken verbatim from their brief, it is:

> Whether the Trial Court erred in granting summary judgment as to the amount of the deficiency judgment as questions of fact exist regarding fraud, collusion and/or misconduct and the fair market value of the Real Property.

III.

We have noted the following:

> Summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion and (2) the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04. The Code provides,
>
> > In motions for summary judgment in any civil action in Tennessee, the moving party who does not bear the burden of proof at trial shall prevail on its motion for summary judgment if it:
> >
> > (1) Submits affirmative evidence that negates an essential element of the nonmoving party's claim; or
> >
> > (2) Demonstrates to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.

*FirstBank v. Horizon Capital Partners, LLC.*, **et al.**, No. E2013-00686-COA-R3-CV, 2014 WL407908 at *2 (Tenn. Ct. App. E.S., filed Feb. 3, 2014)(quoting Tenn. Code Ann. § 20-6-101). As we have further noted,

-4-

[t]he standard of review of a summary judgment determination is de novo without any presumption of correctness accorded the trial court's judgment. Our only task in deciding a motion for summary judgment is to determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

*CitiMortgage, Inc. v. Drake*, 410 S.W.3d 797, 803 (Tenn. Ct. App. 2013)(quoting *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002) (internal citations omitted)).

IV.

Defendants challenge the grant of summary judgment as error. They essentially argue that the case should proceed to trial because they presented sufficient evidence to show that issues of material fact exist regarding (1) fraud, collusion and/or misconduct by Capital Bank in its valuation of the property for sale at foreclosure; and (2) whether the purchase price of the property at foreclosure was "materially less" than fair market value. Simply put, Defendants contend that Capital Bank knowingly sold the Property for an amount significantly below fair market value.

*FirstBank v. Horizon Capital Partners* presents a case similarly focused on whether, in the context of a motion for summary judgment, the defendant debtors submitted sufficient evidence to show that the subject real property was sold at foreclosure for "materially less" than its fair market value. 2014 WL 407908 at *1. In that case, we reviewed relevant provisions of Tennessee law governing foreclosure sales:

When a foreclosure sale of real property secured by a deed of trust fails to satisfy an indebtedness, the creditor may recover a "deficiency judgment in an amount sufficient to satisfy fully the indebtedness." Tenn. Code Ann. § 35-5-118(a). Absent fraud, collusion, misconduct, or irregularity in the foreclosure sale, "the deficiency judgment shall be for the total amount of indebtedness prior to the sale plus the costs of the foreclosure and sale, less the fair market value of the property at the time of the sale." Tenn. Code Ann. § 35-5-118(b). In such cases, "[t]he creditor shall be entitled to a rebuttable prima facie presumption that the sale price of the property is equal to the fair market value of the property at the time of the sale." Tenn. Code Ann.

-5-

§ 35-5-118(b); see Duke v. Daniels, 660 S.W.2d 793, 795 (Tenn. Ct. App. 1983).  If a defendant raises gross inadequacy of the foreclosure price as a defense to the deficiency claim, the defendant "must prove by a preponderance of the evidence that the property sold for an amount materially less than the fair market value of property at the time of the foreclosure sale." Tenn. Code Ann. § 35-5-118(c).

*Id*. at \*2.

Returning to the case now before us, we note that the trial court gave a detailed discussion of its decision.  In relevant part, the court stated:

> Defendants contend that the foreclosure sale price of $400,000 was "materially less" than the fair market value of the property, and therefore a disputed issue of material fact remains with respect to the claim for a deficiency, pursuant to T.C.A. § 35-5-118.  Defendants presented evidence that [Capital Bank] received an offer to purchase the Property for $425,000, which it rejected and counter-offered in the amount of $550,000[].  Defendants also point to the fact that [Capital Bank] placed the Property on the market for $499,000[]on August 22, 2012, only three months after foreclosure.  Defendants assert the actions by [Capital Bank] to attempt to sell the Property for significantly more money shows the Property is worth more than the foreclosure sale price.  After the initial continuance . . . , Defendants also presented their own appraisal, valuing the Property at $475,000[] as of May 1, 2012.  Thus, Defendants contend that the foreclosure sale price of $400,000[] is "materially less" than the actual fair market value. . . .
>
> \*   \*   \*
>
> As an initial matter, the Court cannot consider the evidence presented by the Defendants of valuations placed on the Property by [Capital Bank] as a result of listing the Property for sale.  Specifically, the purchase agreement  for $425,000 . . . was unsigned by [Capital Bank].  Likewise, the $550,000 valuation . . . was not a sale price but a counter-offer only. Finally, the $499,000 price on the listing agreement is not a sale

price either. Thus, the only evidence presented by the Defendants probative of the Property's value at the time of the foreclosure sale is the February 15, 2013 appraisal valuing the Property at $475,000.

[A]s a matter of law, this evidence presented by the Defendants cannot overcome the presumption embodied in T.C.A. § 35-5-118(b) that the foreclosure sale price equals the fair market value.

\* \* \*

[I]f a defendant raises inadequacy of the foreclosure price as a defense to the deficiency claim, the defendant "must prove by a preponderance that the property sold for an amount *materially less* than the fair market value of the property at the time of the foreclosure sale."  T.C.A.  § 35-5-118(c)(emphasis added).

[T]here is relatively little case law dealing with interpretation of the meaning of "materially less."  The relevant cases . . . are both unreported Court of Appeals cases:  *GreenBank v. Sterling Ventures*, *LLC*, 2012 Tenn. App. LEXIS 848, and *State of Franklin Bank v. Riggs*, No. E2010-01505-COA-R3-CV, . . . (Oct. 27, 2011).

\* \* \*

In *Riggs*, the Court of Appeals affirmed a default judgment against the property owners, holding that a difference of 14% between the foreclosure sale price and the appraisal price was not sufficient to overcome the presumption . . .  under the "materially less" standard.

Likewise, in *GreenBank*, the Court of Appeals upheld the granting of summary judgment against property owners where the difference between the foreclosure sale price and the appraisal price was 11%.  [. . . .].  [T]he *GreenBank* court also considered the fact that the property had "substantial damages" . . . in making its determination.

Here, the difference between the Defendants' appraisal price of $475,000 and the foreclosure sale price of $400,000 is 16%, merely 2% more than . . . in *Riggs*. Unlike the property in *GreenBank*, however, the Property . . . here is a vacant lot. Therefore there are few attendant circumstances . . . that would affect the liquidation value of the property. Thus, the Court has little more to go on in making a determination regarding the "materially less" standard than the bare percentage difference between the prices. Because the difference here is only 2% higher than the *Riggs* case, the Court does not think, as a matter of law, [that] Defendants can prove the foreclosure sale price was materially less than the fair market value of the Property.

(Emphasis in original.)

In its continuing analysis, the trial court also rejected Defendants' "new" affirmative defense that Capital Bank "sold the . . . Property . . . at foreclosure for an amount which it knew was less than its market value which constitutes fraud, collusion, and/or irregularity in the sale process." In support of this claim, Defendants presented a July 2008 appraisal that valued the Property at $506,000, as well as three appraisal reviews wherein a Capital Bank officer noted his "continuing agreement" with said appraisal. Defendants also pointed, again, to the 2012 listing agreement for $499,000, the $425,000 purchase offer and $550,000 counter offer in 2013, and Defendants February 2013 appraisal of $475,000 as of the date of foreclosure. The trial court observed:

> Defendants argue that this evidence shows [Capital Bank] was aware of higher valuations of the Property, but bid only $400,000 . . . at the foreclosure sale, thus its actions constituted fraud, collusion, misconduct, or irregularity in the foreclosure sale process.
>
> *   *   *
>
> Here, . . . viewing the evidence in a light most favorable to the Defendants, the Defendants have presented no other proof of fraud or irregularity aside from the varying valuations of the Property. There has been no evidence presented to create a question of material fact as to whether [Capital Bank] intentionally manipulated the foreclosure sale process such that the process was fraudulent or even irregular. Indeed,

-8-

Defendants do not dispute that all other aspects of the foreclosure process . . . were proper. Thus, the Defendants have failed to establish the existence of disputed, material facts, which must be resolved by the trier of fact.

\* \* \*

[W]here no evidence has been presented aside from the inadequacy of consideration, GreenBank . . . must control the Court's analysis.

With GreenBank in mind, the new evidence regarding the inadequacy of the foreclosure sale price . . . like all other evidence presented by the Defendants aside from the February [] 2013 appraisal . . . are not probative of the value of the Property *at the time of* the foreclosure sale on May 16, 2012. [. . .] Accordingly, the new affirmative defense presented by the Defendants and their additional evidence presented in support thereof does not change the Court's analysis . . . and [Capital Bank is] entitled to summary judgment as a matter of law under GreenBank.

(Emphasis in original.)

In part, the defendants in *FirstBank* asserted that they satisfied the "materially less than fair market value" standard through undisputed evidence that the property at issue was sold for 20 percent below its appraised value. This Court determined that such fact alone was not sufficient to create an issue for trial as to fair market value. We explained:

This court has refrained from establishing a "bright-line percentage, above or below which the statutory presumption is rebutted." *GreenBank v. Sterling Ventures, LLC*, No. M2012-01312-COA-R3-CV, 2012 Tenn. App. LEXIS 848, 2012 WL 6115015, at \*10-11 (Tenn. Ct. App. Dec. 7, 2012). Instead, this court has opted to consider the percentage difference along with the condition of the property and any other factors that may provide information concerning the marketability of the property and the surrounding area. Id.; see also *State of Franklin Bank v. Riggs*, No. E2010-01505-COA-R3-CV, 2011 Tenn. App. LEXIS 584, 2011

WL 5090888, at *6 (Tenn. Ct. App. Oct. 27, 2011) (considering the demand for development and the economic climate in the surrounding area). The only additional evidence offered on the condition of the property in this case was provided by Defendants, who simply asserted that the property was complete and habitable as evidenced by lessee's occupation of the premises. While we are constrained to take the evidence in the view most favorable to the nonmoving party, Defendants are essentially asking this court to presume that the appraisal price was equal to the fair market value. Such is not the standard. With these considerations in mind, we conclude that Defendants failed to present sufficient evidence to rebut the presumption that the foreclosure price was equal to the fair market value of the property at the time of the sale.

*FirstBank*, 2014 WL 407908 at *3. Accordingly, this Court affirmed the trial court's grant of summary judgment to FirstBank.

In the present case, we agree with the trial court's well-reasoned analysis to the end that Capital Bank is entitled to summary judgment on its deficiency claim. As the trial court aptly observed, all but one of the valuations upon which Defendants rely were formed months or even years before or after the time the Property was sold at foreclosure. "[T]he issue in deficiency actions is the fair market value of the property *at the time it was sold.*" *Lost Mountain Dev. Co. v. King*, No. M2004-02663-COA-R3-CV, 2006 WL 3740791 at *8 (Tenn. Ct. App. M.S., filed Dec. 19, 2006)(emphasis added)). Here, the trial court correctly concluded that the only relevant evidence Defendants presented in attempting to satisfy the "materially less" standard was the February 2013 appraisal which valued the Property at $475,000 at the time of foreclosure. Under both *GreenBank*, relied upon by the trial court, or our more recent decision in *FirstBank*, as discussed above, the 15.8 percent difference between the appraised price and the foreclosure sale price, with nothing more, is insufficient to establish that the Property was sold for an amount materially less than its fair market value. It follows that Defendants are unable to overcome the statutory presumption that the foreclosure price represented the Property's fair market value at the time of the sale.

In the same vein, we are unpersuaded that Capital Bank's knowledge of the varying valuations of the Property constitutes evidence of any irregularity, much less fraud or misconduct, in the sales process. Although the appraisal of $475,000 valued the Property as of May 2012 – the time of foreclosure – it was not prepared until February 2013, some nine months after foreclosure. Moreover, the appraisal of $475,000 was subject to certain stipulations – the total cost of fill and site work not to exceed $60,000, and the ability to gain

unrestricted highway access to the property. The appraiser noted that without such stipulations being met, "value conclusions should be adjusted downward significantly." No proof is before us regarding whether the stipulations could be met. For its part, Capital Bank obtained an independent appraisal in May 2012 for the purpose of setting the foreclosure sale price and its bid on the Property. The independent appraiser valued the Property at $400,000, the price of Capital Bank's successful bid. In their brief, Defendants state they "do not assert irregularity in the sale process." Instead, they take the position that "there is evidence of *knowledge* by [Capital Bank] that the true value of the . . . Property was over and above that used in the foreclosure sale . . . [and] this constitutes fraud, collusion and/or misconduct" by its actions "impacting the sale price." (Emphasis in original.) To the extent that this defense is other than another way of stating its challenge to the amount of the foreclosure sale price, we reject it outright. Defendants presented no proof that Capital Bank acted in any way to negatively impact the foreclosure sale price. We fail to see how Capital Bank's awareness of a 2008 appraisal and attendant reviews, pre-foreclosure offers and counter-offers, and a post-foreclosure appraisal could amount to fraud, collusion, or other misconduct with respect to the price obtained for the Property at a forced sale. Again, Capital Bank sold the Property at the exact amount at which it was appraised at the time of foreclosure.

The trial court properly rejected Defendants' arguments that essentially challenged the deficiency amount following foreclosure. Defendants failed to establish their claim of inadequate consideration in the sale of the Property, *i.e*, that Capital Bank, in some fraudulent way, knowingly sold the Property for materially less than fair market value as of the time of foreclosure. There being no disputed material issues for the trier of fact to resolve, Capital Bank was entitled to summary judgment on the deficiency claim as a matter of law.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellants, Oscar Brock and Frank E. Cowden, III. This case is remanded, pursuant to applicable law, for enforcement of the trial court's judgment and for collection of costs assessed by the trial court.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE